[No. C037518. Third Dist. July 31, 2001.]

STEVEN G. HANSON, Petitioner, v.
THE SUPERIOR COURT OF SISKIYOU COUNTY, Respondent.

**COUNSEL**

Steven G. Hanson, in pro. per., for Petitioner.

Frank J. DeMarco, County Counsel, William P. Stanley, Assistant County Counsel, Donald R. Langford and Mary Frances McHugh, Deputy County Counsel, for Respondent.

**OPINION**

**SIMS, Acting P. J.**—The respondent superior court held petitioner, Steven G. Hanson, an attorney, in contempt for comments he made while representing a client in a criminal proceeding. Petitioner primarily argues the respondent's court order should be annulled because it fails to set out facts in its

support. Because we conclude the respondent's court order of contempt constitutes an order in a case of indirect contempt, we shall deny the petition.

## I

### FACTS

On November 6, 2000, petitioner was presenting the closing argument to the jury on behalf of the defendant in *People v. Delgadillo* (Super. Ct. Siskiyou County, No. CRF 00-931). Judge Charles N. Henry was presiding. Petitioner argued the prosecutor did not want the jury to see the defendant's wife and young son because he wanted the jury to perceive the defendant as "some sort of drug dealer, gun-toting, evil person [who] deserves to be locked up in prison." After Judge Henry sustained the prosecutor's objection, petitioner asserted the jury would be instructed to return a "just and lawful" verdict, but "just" means "a fair trial," and "Mr. Delgadillo has not received a fair trial in this case."

After excusing the jury, Judge Henry admonished petitioner that his statement was contemptuous. The judge informed petitioner that he would consider imposing sanctions at the conclusion of the trial depending on how the rest of the trial unfolded. The judge also warned petitioner that if he continued to act contemptuously, he would be sanctioned.

Upon the jury's return, petitioner argued the police and the prosecutor had exaggerated the amount of marijuana seized from the defendant. The following colloquy then occurred:

"[Mr. Hanson]: Mr. Larson wants you to see Mr. Delgadillo as less than a person, as an evil, drug-dealing person, a gun-toting, rotten character. But I know he's not. That is the goal of the prosecution, to misrepresent facts.

"Mr. Larson: Objection.

"The Court: Sustained.

"Mr. Hanson: The goal of the prosecution is to represent facts in a way to their side. Defense attorneys do it. I do it in this case. We all do it. That is our job. You should never trust any attorney for what they say. Because they're paid, just like I'm paid to misrepresent the truth to you.

"Mr. Larson: Objection.

"The Court: Sustained. [¶] Counsel, any reference to misrepresentation by any attorney is stricken.

"Mr. Hanson: Excuse me, I should have said to bend the facts to their case, that is what we get paid to do."

Petitioner went on to assert the defendant was the only person who had been completely honest: "He's been more honest than Mr. Larson and myself in this case. We have tried to bend the facts."

After the jury retired to consider its verdict, Judge Henry indicated he was holding petitioner in direct contempt and would conduct a contempt proceeding after a 10-minute recess. Thereafter, the judge explained he was citing petitioner for contempt for arguing: (1) that his client could not receive a fair trial; and (2) that it was the job of the prosecutor and defense attorney to misrepresent the facts. However, the judge then granted petitioner's request for a continuance because of the delicate nature of the contempt proceedings and to allow the court time to review transcripts of petitioner's comments.

The next day, November 7, 2000, Judge Henry filed an order to show cause why petitioner should not be held in contempt. The judge also filed an affidavit, which recited petitioner's statements that his client had not received a fair trial and that the job of the prosecution and defense was to misrepresent the facts. The affidavit asserted these statements "were contemptuous on their face in that judge, prosecutor, defense counsel and the entire judicial process were held out to be a sham and a misrepresentation of the truth to a jury."

After a series of delays, the matter eventually came on for hearing before Judge Larry L. Dier of the respondent superior court on January 22, 2001. During the hearing, the respondent court took judicial notice of the reporter's transcript of the November 6, 2000, proceedings. Petitioner stipulated that, if called to testify, Judge Henry would verify the statements contained in his affidavit.

The next day, January 23, 2001, the respondent court found petitioner in contempt, ordered him either to pay a $200 fine or to serve four days in the county jail and stayed payment of the fine until February 1, 2001. The court then explained: "I find that although the precise word, the misrepresenting or the bending words, were not the subject of a warning by the Court, the whole tenor of the argument it seems to me was that your client couldn't get a fair trial and that lawyers are there to misrepresent and to bend facts. And that is

not a factually true or a legally true statement. Lawyers are there to advocate certainly for their clients, and there often may be a tension between what you can legitimately say and what you can't say. But I think when you make the statement that it's your job to misrepresent or to bend facts, that is well beyond the boundary line. The Court—dignity of the Court and the respect of the Court needs to be maintained, and I think that even [though] those precise words weren't the subject of a warning, that the general tenor of a fair trial issue was continued after the warnings, and so for those reasons I have decided that it was a contempt."

On January 23, 2001, the respondent court signed and filed an order which provides: "The Court finds that Defendant Steve Hanson is guilty of contempt of Court, in violation of CCP code [*sic*] section 1209.A (1)(3)(5) [*sic*], Rules of Professional Conduct Section B200 (a)(b) [*sic*], and Business and Professions Codes [*sic*] Section 6068 (b)(f)." The order then prescribes petitioner's punishment.

On January 29, 2001, petitioner filed a petition for writ of habeas corpus in this court. On February 1, 2001, we stayed enforcement of the contempt order. The respondent court thereafter filed an informal response to the petition. We subsequently notified the parties we would treat the habeas corpus petition as a petition for writ of prohibition (see *In re Coleman* (1974) 12 Cal.3d 568, 572, fn. 2 [116 Cal.Rptr. 381, 526 P.2d 533]), and requested opposition in accordance with the requirements of *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893].[1]

## II

### DISCUSSION

A. *The Contempt Order Is Not Invalid by Virtue of Its Failure to Recite Facts in Support of Its Findings.*

 Petitioner first contends the respondent's January 23, 2001, contempt order is void on its face because it is a direct contempt order and must therefore state sufficient facts to support the contempt finding. Because we conclude the respondent's court order found an indirect contempt, we reject petitioner's contention.

"When a contempt is committed in the immediate view and presence of the court, or of the judge at chambers, it may be punished summarily; for

---

[1] Prohibition lies to determine whether a superior court has exceeded its jurisdiction by imposing an invalid contempt order. (*Lister v. Superior Court* (1979) 98 Cal.App.3d 64, 69 [159 Cal.Rptr. 280].)

which an order must be made, reciting the facts as occurring in such immediate view and presence, adjudging that the person proceeded against is thereby guilty of a contempt, and that he be punished as therein prescribed. [¶] When the contempt is not committed in the immediate view and presence of the court, or of the judge at chambers, an affidavit shall be presented to the court or judge of the facts constituting the contempt, or a statement of the facts by the referees or arbitrators, or other judicial officers." (Code Civ. Proc., § 1211, subd. (a).)[2]

■ " 'Direct' contempt is that committed in the immediate view and presence of the court or of the judge in chambers; all other contempts, . . . which occur outside the presence of the court, are 'indirect.' [Citation.]" (*Reliable Enterprises, Inc. v. Superior Court* (1984) 158 Cal.App.3d 604, 611 [204 Cal.Rptr. 786], disapproved on another ground in *Mitchell v. Superior Court* (1989) 49 Cal.3d 1230, 1248, fn. 13 [265 Cal.Rptr. 144, 783 P.2d 731].)

"In a case of *direct* contempt, the court must make an order reciting the facts constituting the contempt. [Citations.] However, in a case of *indirect* contempt, the court need not state evidentiary facts supporting an ultimate finding of wilful violation of an order. Such a finding will be upheld in a case of indirect contempt if it is supported by substantial evidence. [Citations.]" (*Reliable Enterprises, Inc. v. Superior Court, supra,* 158 Cal.App.3d at p. 614.)

"[T]he generally recommended standard that the order recite every factor essential to the contempt holding appears to have been promulgated for application in direct contempt cases wherein there is no filing and serving of charging documents which present a prima facie showing of such elements or a record thereof. The significant thing in the indirect contempt cases is that the record contain the findings upon which the contempt order is based." (*In re Morelli* (1970) 11 Cal.App.3d 819, 850-851 [91 Cal.Rptr. 72], fn. omitted.)

"Moreover, while an indirect contempt judgment need not recite the court's factual findings as a jurisdictional prerequisite, those findings should be specifically recited orally or in the judgment to assist a reviewing court in determining if the evidence is sufficient to support the judgment of contempt." (*Moss v. Superior Court* (1998) 17 Cal.4th 396, 404, fn. 3 [71 Cal.Rptr.2d 215, 950 P.2d 59].)

■ Although direct contempt may be punished instantly by the court, where the contempt is committed by an attorney in the midst of a jury trial

---

[2]Further references to sections of an undesignated code are to the Code of Civil Procedure.

"[v]irtually uniform practice entails deferment of the contempt adjudication or of actual punishment until the jury is discharged." (*People v. Fusaro* (1971) 18 Cal.App.3d 877, 888 [96 Cal.Rptr. 368].) The term "summarily," as used in section 1211, "refers to the character of the contempt proceeding, not its timing, and does not demand instanter punishment. [Citations.]" (18 Cal.App.3d at p. 889.)

Moreover, when the contempt adjudication or punishment is deferred to the end of trial, the attorney must have reasonable notice of the charges and an opportunity to respond, and the hearing may, and sometimes must, be set before another judge. (*Taylor v. Hayes* (1974) 418 U.S. 488, 498-499, 501-502 [94 S.Ct. 2697, 2703-2704, 2704-2705, 41 L.Ed.2d 897]; *Mayberry v. Pennsylvania* (1971) 400 U.S. 455, 466 [91 S.Ct. 499, 505, 27 L.Ed.2d 532]; *In re Karagozian* (1975) 44 Cal.App.3d 516, 522-524 [118 Cal.Rptr. 793].)

■ Because petitioner's statements were made in Judge Henry's immediate view and presence, Judge Henry could have himself adjudicated and punished the contempt. However, Judge Henry chose instead to utilize the procedures for indirect contempt, and chose to set the matter for hearing before another judge, Judge Dier. Because none of the contemptuous conduct occurred "in the immediate view and presence of" Judge Dier, the respondent court adjudicated an indirect contempt.

The parties have simply assumed that if a contempt occurs in a judge's immediate presence, the contempt necessarily constitutes for all time or must be adjudicated as a direct contempt. This assumption is inconsistent with case law recognizing a judge's authority to defer the contempt adjudication to another judge. The assumption is also inconsistent with the language of section 1211, which requires "the court, or . . . the judge at chambers," when adjudicating contempt as direct contempt, to recite "the facts as occurring in such immediate view and presence." When, as here, a judge chooses to defer adjudication of contempt to another judge, the judge who adjudicates the contempt obviously cannot recite the facts as occurring in the judge's immediate view and presence. Rather, the second judge must, as here, be presented with "an affidavit . . . of the facts constituting the contempt, or a statement of the facts by the referees or arbitrators, or other judicial officers."

Although the respondent court should have set out the facts constituting the contempt in its January 23, 2001, order, the court was not jurisdictionally required to do so. Rather, the court orally recited the facts constituting contempt at the conclusion of the January 23, 2001, hearing. Therefore, the

contempt order is not void for failure to recite the facts constituting contempt.

Nor does petitioner's alternative contention have merit, that even if the order is one in indirect contempt, it is insufficient because "the order must still show that the court found sufficient facts to be true as to constitute a contempt." Petitioner cites two cases involving indirect contempt, both of which recite the rule that the indirect contempt order will stand if " 'the record unmistakably shows that the court found to be true all the facts constituting contempt of the authority of the court.' " (*Bone v. Superior Court* (1966) 245 Cal.App.2d 972, 975 [54 Cal.Rptr. 406], quoting *Harlan v. Superior Court* (1949) 94 Cal.App.2d 902, 906 [211 P.2d 942], disapproved on another ground in *Signal Oil etc. Co. v. Ashland Oil etc. Co.* (1958) 49 Cal.2d 764, 775-776, fn. 5 [322 P.2d 1].) Our record so unmistakably shows.

B. *The Affidavit Charging Contempt Is Procedurally Regular.*

Petitioner next raises a series of contentions challenging the procedural regularity of the affidavit setting forth the contemptuous acts. Petitioner first contends the respondent court prejudicially failed to amend the affidavit to include allegations of contempt made by Judge Henry during the contempt hearing concerning a videotape brought into court by the defendant in the underlying criminal case.

Petitioner's argument is not supported by the record. Judge Henry never alleged that petitioner's conduct involving the videotape was contemptuous. Rather, Judge Henry mentioned the incident involving the videotape solely as background information, relevant to explain why petitioner may have been motivated to assert that his client had not received a fair trial.

Petitioner next asserts the affidavit is insufficient because it fails to allege petitioner violated the court's order not to mention a "Proposition 215 defense" and, further, there is neither a finding nor evidence that petitioner violated this court order. This is irrelevant. Judge Henry's affidavit makes it clear he cited petitioner for contempt based on petitioner's statements that his client had not received a fair trial and that both petitioner and the prosecutor had misrepresented the facts, *not* because petitioner violated the court's order not to mention Proposition 215.

Petitioner also argues the affidavit is insufficient because it does not allege any of the contemptuous statements were made toward the judge. Again, petitioner is wrong. The affidavit alleges petitioner's statements held the judge out as being "a sham" and as misrepresenting the truth to the jury.

## C. *Petitioner's Statements Were Contemptuous.*

■ Petitioner contends that neither of his statements was contemptuous. First, he argues his remark that his client had not received a fair trial did not constitute contempt because it was not directed toward the judge, relying on "In re Carrow CA3d 924 [*sic*]." We disagree.

In *In re Carrow* (1974) 40 Cal.App.3d 924 [115 Cal.Rptr. 601], the Court of Appeal annulled a finding of contempt based on an attorney's remark, " 'Your Honor, I submit this trial is becoming a joke.' " The appellate court explained the remark was not contemptuous on its face because it did not refer to judicial conduct. (*Id.* at pp. 927-928.) Moreover, the court concluded the contempt order was defective in failing to recite how the remark obstructed the administration of justice, particularly given the context of the case. (*Id.* at pp. 928-930.) That is, the attorney had called a probation officer as a witness and was necessarily concerned about limiting the scope of cross-examination. The trial court refused to hear from the attorney when he tried to address the court regarding imposing such limitations. During the prosecutor's cross-examination of the witness, the witness "ran away with a narrative." (*Id.* at p. 928.) As the Court of Appeal explained: "Then came the single expostulation from petitioner. It may have been directed primarily at the witness and only secondarily, if at all, at the judge." (*Id.* at p. 929.)

Petitioner fails to address the case distinguished by the court in *Carrow*, i.e., *In re Buckley* (1973) 10 Cal.3d 237 [110 Cal.Rptr. 121, 514 P.2d 1201, 68 A.L.R.2d 248]. There, the Supreme Court upheld a finding of contempt based on an attorney's statement, " 'This Court obviously doesn't want to apply the law.' " (*Id.* at pp. 246, 259.) The Supreme Court explained "it is the settled law of this state that an attorney commits a direct contempt when he impugns the integrity of the court by statements made in open court either orally or in writing. [Citations.]" (*Id.* at p. 248.) The Supreme Court held the statement was contemptuous on its face because it impugned the court's integrity by suggesting "that the judge knew the law but deliberately chose to ignore it," and thus, with no basis in fact, improperly charged "deliberate judicial dishonesty." (*Id.* at p. 250; see also *Gillen v. Municipal Court, etc.* (1940) 37 Cal.App.2d 428, 429 [99 P.2d 555] [contempt affirmed where attorney said that opposing counsel had won before he started].)

Unlike *Carrow*, but like *Buckley* and *Gillen*, petitioner's statement that his client "has not received a fair trial" was contemptuous on its face because it impugned Judge Henry's integrity by suggesting he had failed in his duty to guarantee a fair trial. Petitioner's remark constituted "[d]isorderly, contemptuous, or insolent behavior toward the judge while holding the court, tending

to interrupt the due course of a trial or other judicial proceeding." (§ 1209, subd. (a)1.)

Finally, petitioner contends his statement that the prosecutor's purpose was to misrepresent the facts was not contemptuous, relying on "<u>P v. Bell</u> C3d 502, 538 [*sic*]." In *People v. Bell* (1989) 49 Cal.3d 502, 538 [262 Cal.Rptr. 1, 778 P.2d 129], the prosecutor argued to the jury that it was the defense attorney's job to " 'focus on areas which tend to confuse' " and to " 'throw sand in your eyes,' " and that defense counsel " 'wants to confuse you.' " The issue before the Supreme Court was not whether these statements were contemptuous but rather whether they constituted prosecutorial misconduct. The court held that to the extent the remarks could be construed as suggesting counsel was obligated to present a defense dishonestly, the argument was improper, but rejected the claim of error because the defense attorney failed to object. (*Ibid.*) *Bell* supports the respondent's conclusion that it is contemptuous for an attorney to assert that opposing counsel's job is to misrepresent the facts.

A court may hold an attorney in contempt for willful violation of a duty. (§ 1209, subd. (a)3.) An attorney has the duty to maintain respect to the courts and judicial officers, to abstain from all offensive personality, and not to mislead the judge or jury by an artifice or false statement of fact or law. (Bus. & Prof. Code, § 6068, subds. .(b), (d) & (f); Rules Prof. Conduct, rule 5-200(B).) Petitioner violated these duties by arguing to the jury that it was the goal of the defense and prosecution to misrepresent the facts.

### III

### DISPOSITION

The petition for writ of habeas corpus, treated as a petition for writ of prohibition, is denied. The stay previously issued is vacated.

Callahan, J., and Hull, J., concurred.