Filed 4/10/17

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| INLAND COUNTIES REGIONAL CENTER, INC., | E067232 |
| Petitioner, | (Super.Ct.No. INF1600191) |
| v. | OPINION |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | |
| Respondent; | |
| ADAN OMAR BARAJAS, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING; petition for writ of mandate. Dean Benjamini, Judge. Petition granted.

Enright & Ocheltree, Judith A. Enright, Julie A. Ocheltree, Noelle V. Bensussen and Aaron Abramowitz for Petitioner.

No appearance for Respondent.

Steven L. Harmon, Public Defender, Brian L. Boles, Thomas M. Cavanaugh, Assistant Public Defenders, Laura Arnold, Deputy Public Defender, for Real Party in Interest.

Petitioner, Inland Counties Regional Center, Inc. (IRC), helps coordinate care and services for individuals with developmental disabilities. (See, e.g., Cal. Code Regs., tit. 17, § 54302, subd. (a)(54).) The trial court in this case ordered IRC to assess the competency of real party in interest, Adan Omar Barajas (Barajas), to stand trial on criminal charges and then, when IRC failed to comply, held it in contempt and imposed monetary sanctions against it. Because we agree with IRC that this order was unjustified, we grant the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 18, 2016, the People filed a felony complaint charging Barajas with vehicle theft (Veh. Code, § 10851, subd. (a)), knowingly obtaining a stolen vehicle (Pen. Code, § 496d, subd. (a)), driving under the influence (Veh. Code, § 23152, subd. (e)), and possession of paraphernalia used for smoking a controlled substance (Health & Saf. Code, § 11364). Barajas pled guilty to the vehicle theft and driving under the influence counts on February 29, 2016, and the other counts were dismissed. The trial court sentenced him to probation.

Barajas then allegedly violated probation, causing the trial court to issue a bench warrant on June 24, 2016. On July 19, 2016, the deputy public defender appointed to represent Barajas requested a competency evaluation under Penal Code section 1368.

2

The court granted the motion and appointed Patricia Kirkish, Ph.D., to conduct an evaluation. On August 18, 2016, Dr. Kirkish produced a report opining that Barajas lacked competency to stand trial, possibly due to a cognitive impairment.

On September 2, 2016, the trial court, after reading Dr. Kirkish's report, found Barajas to be incompetent to stand trial and suspended criminal proceedings against him. It ordered a placement evaluation, which was provided on September 19, 2016. On September 26, 2016, the trial court held a hearing regarding Barajas's placement recommendation and issued a minute order reading, as relevant to this petition: "Court has read and considered Placement Evaluation. Court orders Inland Regional Center to provide a determination as to whether or not the defendant is incompetent due to developmental disabilities pursuant to 1369 [of the Penal Code]. Inland Regional Center to provide a report to the Court on or before 10/24/16."

IRC responded by sending the trial judge a "confidential" letter[1] on October 12, 2016, indicating that it could not perform a competency evaluation of Barajas unless it was first determined that he was eligible for IRC's services by virtue of having a developmental disability. The letter indicated IRC would, in fact, perform the evaluation, but if and only if Barajas was found to have a developmental disability. It also asked for a certified minute order providing access to Barajas and to his medical records.

---

[1] The trial court later indicated this letter was returned because it had been filed in the wrong department.

On October 24, 2016, the date set for production of the report IRC was ordered to provide on September 26, 2016, the trial court again held a hearing regarding Barajas's placement. The minute order the trial court issued reads, in relevant part: "Court orders Inland Regional to perform an evaluation pursuant to 1369 [of the Penal Code]. Evaluation returnable on 11/7/16. If no report is returned to the Court on or before 11/7/16 the Court orders a representative of Inland Regional to appear before the Court and justify why Inland Regional Center should not be held in contempt of Court."

IRC again responded with a "confidential" letter on November 4, 2016, explaining its position that it could not evaluate competency unless and until it determined that Barajas had a developmental disability. To this letter, IRC attached another letter, this one dated July 8, 2015, in which it explained to local courts and the agencies providing attorney representation in criminal cases that it would "no longer be conducting competency evaluations unless or until the defendant is found eligible for Regional Center services by a Regional Center." In the November 4, 2016 letter, IRC repeated its request for a certified minute order granting face-to-face access to Barajas, and access to his medical records. It also expressed a need for his school records and evaluations prior to age 18 and requested eight weeks to complete its eligibility evaluation report.

The parties appeared for another hearing on November 7, 2016. The trial court began by confirming that it intended to hold a contempt proceeding after verifying that IRC had not, in fact, prepared a report regarding Barajas's competency to stand trial. When describing the case's procedural history, the court explained: "When I was

4

rereading [Dr. Kirkish's] report, two things jumped out at me. Number one, is that [Barajas] appears to have been the victim of some traumatic brain injury, perhaps around the age of 18. But, more importantly, he also reported being in special education classes in the 5th grade and having a very difficult time succeeding to the point where, I believe, he had to be home schooled by a[n] uncle. [¶] When I read both of those things in conjunction, I had a suspicion that the incompetence was due to a developmental disability. Therefore, pursuant to Penal Code Section 1369[, subdivision] (a), I entered an order on September the 26th of this year to the Inland Regional Center to determine whether or not the defendant is incompetent, due to the developmental disability pursuant to Penal Code Section 1369." The trial court then characterized IRC's first confidential letter as "essentially stating [there had been] an illegal court order," and the second as "essentially stating that [IRC] is not going to comply with the Court's order."

IRC's counsel referred the trial court to the November 4, 2016 letter, which relied on several sections in the Welfare and Institutions Code as authority supporting the position that IRC could not commit to doing more than assessing Barajas for a developmental disability at that time. The trial court responded that Penal Code section 1369, subdivision (a), "stands apart from" those statutes and then cited *People v. Leonard* (2007) 40 Cal.4th 1370 (*Leonard*) as support for the idea that the experts who evaluated Barajas's competency should have experience with developmental disability. In concluding, the trial noted that Penal Code section "1369 specifically refers to a suspicion by the courts," and then stated: "I have a suspicion based on the information contained in

5

Dr. Kirkish's report. Therefore, pursuant to 1369[, subdivision] (a) I made the order, which appears to be a valid order. [¶] So, my intention at this point . . . is to hold [IRC] in contempt."

The trial court then found petitioner in contempt of court, imposed sanctions of $1,000, and stayed the order for 14 days to allow petitioner to seek appellate review. This petition followed on November 21, 2016.

The next day, we issued an order requesting an informal response and staying the action. After receiving an informal response from Barajas, a letter stating the People would not be responding to the petition, and a reply, we issued an order to show cause on December 14, 2016. On December 22, 2016, Barajas filed a return, in which he argued the contempt order was lawful, in part because the court "had, by that point in time, already found that Real Party was incompetent due to a mental illness or developmental disability." Barajas further accused the petition of asking the court to legislate from the bench by suggesting that the statutory timeframe established for an initial assessment for services by a regional center for the developmentally disabled (Welf. & Inst. Code, § 4643, subd. (a)) also sets limits on the time in which a court may order a regional center to complete an evaluation into a criminal defendant's competency to stand trial. On January 6, 2017, IRC filed a traverse responding to these contentions.

Barajas then moved to withdraw the return on January 26, 2017. His counsel explained that, after reading the transcripts and minute orders of the hearings described *ante*, she concluded the court's order seems unlawful because IRC cannot be ordered to

6

perform a full competency evaluation unless Barajas is found to actually have a developmental disability. A footnote on the last page of the motion states: "In light of [Barajas's] change in position, this court need not resolve whether the 120-day timeframe of Welfare and Institutions Code section 4643, subdivision (a) applies to assessments of incompetent criminal defendants under Penal Code section 1369, subdivision (a)."

Barajas cites, and we are aware of, no authority allowing a party to withdraw a return that has been filed with the court. A clerk of the court has a duty to "safely keep or dispose of according to law all papers and records filed or deposited in any action or proceeding before the court" (Gov. Code, § 69846), and we will not interfere with performance of this function by ordering a previously filed document withdrawn rather than replaced with a brief that better reflects Barajas's current response to the petition. Instead, we will deny the motion to withdraw the return and deem Barajas to have waived any objections to the timeframe in which IRC assesses him.

In addition, IRC requests judicial notice of an amicus brief the California Department of Developmental Services (DDS) filed in *Leonard* at the request of the California Supreme Court. (*Leonard*, *supra*, 40 Cal.4th at p. 1390, fn. 2.) Barajas makes no objection to our granting the request. As the DDS letter provides helpful information about the way in which IRC functions, we grant IRC's request for judicial notice of DDS's amicus brief from *Leonard*. (Evid. Code, § 459.)

7

DISCUSSION

Contempt judgments and orders "are final and conclusive." (Code Civ. Proc., § 1222.) Nonetheless, review will lie by certiorari. (*In re Buckley* (1973) 10 Cal.3d 237, 259.) "A reviewing court may, in such a proceeding, examine the allegations of contemptuous acts alleged to determine if they do in fact constitute contemptuous acts sufficient to give the court jurisdiction to punish petitioner for contempt, and the review may extend to the whole of the record of the court below where it is necessary to determine the jurisdictional fact." (*Chula v. Superior Court* (1952) 109 Cal.App.2d 24, 26 (*Chula*).)

"A trial court may take action to punish contempt under section 1218 of the Code of Civil Procedure. The elements of proof necessary to support punishment for contempt are: (1) a valid court order, (2) the alleged contemnor's knowledge of the order, and (3) noncompliance. [Citations.] The order must be clear, specific, and unequivocal. [Citation.] 'Any ambiguity in a decree or order must be resolved in favor of an alleged contemnor.' [Citation.] [¶] In writ proceedings to review an adjudication of contempt, our inquiry is whether there was any substantial evidence before the trial court to prove the elements of the contempt. Absent such evidence, the order must be annulled." (*In re Marcus* (2006) 138 Cal.App.4th 1009, 1014-1015, fn. omitted (*Marcus*).)

In this case, we conclude there was no "contemptuous act[] sufficient to give the court jurisdiction to punish petitioner for contempt." (*Chula*, *supra*, 109 Cal.App.2d at p. 26.) First, and on a relatively general level, we note it appears the trial court found

8

IRC in contempt because it and IRC's counsel disagreed about the interpretation of both Penal Code section 1369 and of *Leonard*. "While a court has inherent power to punish for contempt, this is a drastic remedy which should be used only when necessary in order to maintain law and order. It should rarely, if ever, be used for the purpose of settling differences of opinion between conscientious officials with respect to close questions of civil law. Whether or not the power to do so technically existed here, in our opinion it was an abuse of discretion to punish the petitioner for contempt under these circumstances." (*Uhler v. Superior Court* (1953) 117 Cal.App.2d 147, 156.)

Second, our review of the specifics of this petition leads us to conclude that the trial court lacked the ability to find IRC in contempt because the order requiring petitioner to fully evaluate Barajas's competency was not a "valid court order." (*Marcus*, *supra*, 138 Cal.App.4th at p. 1014.) We now explain why this is so.

With exceptions not relevant to this proceeding, DDS "has jurisdiction over the execution of the laws relating to the care, custody, and treatment of developmentally disabled persons." (Welf. & Inst. Code, § 4416.) In the amicus brief it filed in *Leonard*, DDS itself explained: "Services are rendered to persons with developmental disabilities (referred to in the Lanterman Act as 'consumers') through a unique administrative structure incorporating private and public institutions. The Act creates 21 Regional Centers ('RC's'), operated by private, nonprofit community agencies under contract with DDS. RC's, not DDS, determine eligibility, services to be rendered and arrange for their

9

delivery.  ([Welf. & Inst. Code,] §§ 4620, 4630, 4648, 4651.)"  IRC is one of the regional centers charged with determining eligibility and arranging for delivery of services.

DDS's amicus brief continues:  "RC's are required to conduct a comprehensive assessment of persons who are potentially eligible for services.  ([Welf. & Inst. Code,] § 4643.)  RC's review diagnostic data and provide or procure necessary tests and evaluations, including 'intelligence tests, adaptive functioning tests, neurological and neuropsychological tests, diagnostic tests performed by a physician, psychiatric tests, and other tests or evaluations that have been performed by, and are available from, other sources.' "  DDS then explains that assessing a person for developmental disability is "a multilayered process" that occurs in steps.  It often requires both standardized testing and interviews with people familiar with the individual being assessed, and it requires an exercise of "clinical judgment," which is defined as " 'a special type of judgment rooted in a high level of clinical expertise and experience; it emerges directly from extensive data.  It is based on the clinician's explicit training, direct experience with people who have mental retardation, and familiarity with the person and the person's environments.' "

Any California resident "believed to have a developmental disability"[2] may apply to a regional center "for initial intake, diagnostic and counseling services, and a

_____

    [2] The same provision also applies to any California resident "believed to be at high risk of parenting an infant with a developmental disability."  (Cal. Code Regs., tit. 17, § 54010, subd. (a).)

10

determination regarding the need for assessment." (Cal. Code Regs., tit. 17, § 54010, subd. (a).) After that, "Eligibility for ongoing regional center services shall be contingent upon the determination, after intake and assessment, that the person has a developmental disability that constitutes a substantial disability." (Cal. Code Regs., tit. 17, § 54010, subd. (b).) In addition to DDS's amicus brief, previous authority from this court confirms that the assessment of whether an individual has a developmental disability is a task reserved for a regional center. (*Mason v. Office of Admin. Hearings* (2001) 89 Cal.App.4th 1119, 1125-1126.)

This petition asks us to probe the intersection[3] between DDS's system of having regional centers assess and manage services for persons with developmental disabilities and the system by which courts process cases involving criminal defendants who are or are suspected to be incompetent to stand trial. We provide the following as a brief background on the latter.

Penal Code section 1367, subdivision (a), prohibits the trial of a criminal defendant who, "as a result of mental disorder or developmental disability . . . is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." Subdivision (b) of the same statute explains that Penal Code section 1370 applies to a defendant who is charged with a felony and found

---

[3] We emphasize that our holding in this case is very narrow, as we find only that the trial court lacked jurisdiction to find IRC in contempt because the court order on which the contempt finding was based was not a valid order. We need not, and therefore do not, provide guidance beyond that necessary to explain the basis for our holding.

11

incompetent "as a result of a mental disorder," while Penal Code "[s]ection 1370.1 shall apply to a person who is incompetent as a result of a developmental disability and shall apply to a person who is incompetent as a result of a mental disorder, but is also developmentally disabled."

If a trial judge develops a doubt about the mental competence of a criminal defendant prior to judgment, the judge is to ask the defendant's counsel for an opinion regarding competency.[4] (Pen. Code, § 1368, subd. (a).) The trial court is to order a hearing in accordance with, as relevant to this petition, Penal Code section 1369 if counsel indicates he or she believes the defendant is incompetent. (Pen. Code, § 1368, subd. (b).) "[T]he court may nevertheless order a hearing," even if counsel expresses a belief that the defendant is competent. (*Ibid*.) If the trial court sets a hearing regarding competency, "all proceedings in the criminal prosecution shall be suspended until the question of the present mental competence of the defendant has been determined." (Pen. Code, § 1368, subd. (c).)

Penal Code section 1369 governs proceedings on the issue of a criminal defendant's competency to stand trial and is the crux of this petition. The portion of the statute that is the most relevant to our concerns reads: "The court shall appoint a psychiatrist or licensed psychologist, and any other expert the court may deem appropriate, to examine the defendant. In any case where the defendant or the

---

**4** Counsel is to be appointed if the defendant is unrepresented. (Pen. Code, § 1368, subd. (a).)

12

defendant's counsel informs the court that the defendant is not seeking a finding of mental incompetence, the court shall appoint two psychiatrists, licensed psychologists, or a combination thereof. One of the psychiatrists or licensed psychologists may be named by the defense and one may be named by the prosecution. The examining psychiatrists or licensed psychologists shall evaluate the nature of the defendant's mental disorder, if any, the defendant's ability or inability to understand the nature of the criminal proceedings or assist counsel in the conduct of a defense in a rational manner as a result of a mental disorder and, if within the scope of their licenses and appropriate to their opinions, whether or not treatment with antipsychotic medication is medically appropriate for the defendant and whether antipsychotic medication is likely to restore the defendant to mental competence. If an examining psychologist is of the opinion that antipsychotic medication may be medically appropriate for the defendant and that the defendant should be evaluated by a psychiatrist to determine if antipsychotic medication is medically appropriate, the psychologist shall inform the court of this opinion and his or her recommendation as to whether a psychiatrist should examine the defendant. The examining psychiatrists or licensed psychologists shall also address the issues of whether the defendant has capacity to make decisions regarding antipsychotic medication and whether the defendant is a danger to self or others. If the defendant is examined by a psychiatrist and the psychiatrist forms an opinion as to whether or not treatment with antipsychotic medication is medically appropriate, the psychiatrist shall inform the court of his or her opinions as to the likely or potential side effects of the medication, the

13

expected efficacy of the medication, possible alternative treatments, and whether it is medically appropriate to administer antipsychotic medication in the county jail. If it is suspected the defendant is developmentally disabled, the court shall appoint the director of the regional center for the developmentally disabled established under Division 4.5 (commencing with Section 4500) of the Welfare and Institutions Code, or the designee of the director, to examine the defendant. The court may order the developmentally disabled defendant to be confined for examination in a residential facility or state hospital.

"The regional center director shall recommend to the court a suitable residential facility or state hospital. Prior to issuing an order pursuant to this section, the court shall consider the recommendation of the regional center director. While the person is confined pursuant to order of the court under this section, he or she shall be provided with necessary care and treatment." (Pen. Code, § 1369, subd. (a) (§ 1369(a).)

In our view, the trial court exaggerated the scope of Penal Code section 1369(a) when it assumed that language allowing it to "appoint the director of the regional center . . . to examine the defendant," allowed it to order IRC to complete a full competency evaluation. We note the statutory language quoted above suggests that the opposite is true, and that the nature of the appointment of a regional director to "examine" a defendant with a suspected developmental disability is more limited than the appointment of "a psychiatrist or licensed psychologist, and any other expert the court may deem appropriate" to examine the defendant. The portion of the statute that described the

14

appointment of "a psychiatrist or licensed psychologist" explicitly requires the appointee to "evaluate the nature of the defendant's mental disorder, if any, the defendant's ability or inability to understand the nature of the criminal proceedings or assist counsel in the conduct of a defense in a rational manner as a result of a mental disorder." (Pen. Code, § 1369(a).) The evaluator is also, where appropriate, to provide opinions relating to the administration of antipsychotic medication. (*Ibid*.)

In contrast, Penal Code section 1369(a) only requires the director of a regional facility to "examine the defendant" and to make a placement recommendation. The Legislature showed it knows how to explicitly require an evaluator to express an opinion on a defendant's competency to stand trial, specifically. It chose to do so in the context of "a psychiatrist or licensed psychologist" appointed to "evaluate the nature of the defendant's mental disorder, if any," but not in the context of the director of a regional facility. (Pen. Code, § 1369(a).) We may not ignore this distinction as we interpret Penal Code section 1369(a).

*Leonard*, in our view, is of no more support to the trial court than the text of Penal Code section 1369(a). There, a jury convicted the defendant of six counts of murder and two counts of robbery with special circumstances and enhancements. (*Leonard*, *supra*, 40 Cal.4th at p. 1376.) Although the trial court appointed two experts to evaluate defendant's competency to stand trial, it did not, as required by Penal Code section 1369(a), appoint the director of a regional center. (*Id.* at p. 1387.) The defendant argued on appeal that this was a jurisdictional error requiring reversal. (*Ibid.*) In explaining that

15

an error had occurred but that it did not require reversal, the court noted three functions

behind the requirement that the director of a regional center "examine" the defendant:

assisting the trial court in determining where the defendant should be confined pending

the competency hearing; making a placement recommendation if the defendant is found

incompetent; and "ensur[ing] that a developmentally disabled defendant's competence to

stand trial is assessed by those having expertise with such disability." (*Id.* at p. 1389.)

First, we find *Leonard* is factually distinguishable in a way that highlights the

error in the court's substantive analysis. The defendant there was diagnosed with

epilepsy before the age of 18, which is by statute a condition amounting to a

developmental disability.[5] (*Leonard*, *supra*, 40 Cal.4th at p. 1388.) The same is not true

in this case; in fact, the October 12, 2016 confidential letter to the court indicates that

IRC had not assessed Barajas for developmental disability. The trial court assumed that

*Leonard* applied, just as it appeared to assume that Barajas does, in fact, have a

developmental disability. This approach puts the cart before the horse, since, as we

explained *ante*, assessing whether an individual has a developmental disability is a

---

[5] " 'Developmental disability' means a disability that originates before an individual attains 18 years of age; continues, or can be expected to continue, indefinitely; and constitutes a substantial disability for that individual. As defined by the Director of Developmental Services, in consultation with the Superintendent of Public Instruction, this term shall include intellectual disability, cerebral palsy, epilepsy, and autism. This term shall also include disabling conditions found to be closely related to intellectual disability or to require treatment similar to that required for individuals with an intellectual disability, but shall not include other handicapping conditions that are solely physical in nature." (Welf. & Inst. Code, § 4512, subd. (a).)

complicated process that requires multiple steps, and, to our knowledge, these steps have yet to be completed.

Second, the fact that *Leonard* is distinguishable on the ground we just identified means that, in our view, *Leonard* supports IRC's position more than the trial court's. The *Leonard* court explained that, according to DDS's amicus brief, "A regional center . . . is 'the primary agency to provide expert advice relating to the assessment, needs, and abilities of a criminal defendant with developmental disabilities.' Court-appointed psychiatrists and psychologists may not have this expertise, because their experience may pertain to mental illness rather than developmental disability." (*Leonard*, *supra*, 40 Cal.4th at p. 1390.) Here, the trial court appears to have assumed that, because it suspected a developmental disability was present, Barajas needed to be evaluated by professionals with expertise in developmental disability. But Barajas has not yet been found to have a developmental disability. If his incompetence stems from something other than a developmental disability, the logic of *Leonard* seems to compel the conclusion that Barajas should *not* be seen by IRC, because IRC's expertise is in an inapplicable field. (See *Leonard*, *supra*, 40 Cal.4th at p. 1391 ["[A]ppointment of the director of the regional center for the developmentally disabled (§ 1369, subd. (a)) is intended to ensure that a developmentally disabled defendant is evaluated by experts experienced in the field, which will enable the trier of fact to make an informed determination of the defendant's competence to stand trial."].)

17

For the foregoing reasons, we find the trial court's order that IRC complete a competency evaluation on Barajas, who has not been assessed for developmental disability, was invalid. The trial court therefore lacked jurisdiction to find IRC in contempt.

As previously indicated, IRC asks us to find that the Welfare and Institution Code's timelines for assessing developmental disability should govern its assessment of Barajas. (Welf. & Inst. Code, §§ 4642, 4643.) We need not resolve this issue to explain our holding, and, especially given Barajas's change of position regarding the speed at which IRC has acted to date, we will make no attempt to do so. We also need not and therefore do not attempt to answer whether, as the petition contends, the trial court lacked jurisdiction to disagree with an action by IRC without first exhausting the administrative remedies set forth in Welfare and Institutions Code section 4701 et seq.

### DISPOSITION

Let a peremptory writ of mandate issue, directing the Superior Court of Riverside County to vacate the contempt order entered on November 7, 2016. The temporary stay we issued is to dissolve upon filing this opinion.

IRC is directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

18

Petitioner's request for judicial notice is GRANTED.  Barajas's motion to withdraw the return is DENIED.

CERTIFIED FOR PUBLICATION

McKINSTER
Acting P. J.

We concur:

MILLER
J.

SLOUGH
J.

19