Filed 5/28/25  Marriage of Stubbs CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of APRIL and MICAH STUBBS. | H051346<br>(Santa Clara County<br> Super. Ct. No. 21FL002119) |
| APRIL STUBBS,<br><br>       Respondent,<br><br>       v.<br><br>MICAH STUBBS,<br><br>       Appellant. | |

Appellant Micah Stubbs (father) and respondent April Stubbs (mother) dissolved their marriage in April 2022.  They share legal and physical custody of minor children from their marriage.  In this appeal from a June 12, 2023 postjudgment order, father, a self-represented litigant in this court, contends that the trial court committed reversible error by modifying his child support obligations in two ways without notice or a showing of changed circumstances:  (1) by requiring him to pay an equal share of "all" extracurricular activities without limitation; and (2) by requiring him to pay an equal share of specific extracurricular activities addressed in the order.  Because we read the order as imposing only the second of these modifications, to which he did not object in the trial court, we will affirm.

## I.   BACKGROUND

### A.   *The Marital Settlement Agreement and Judgment*

In April 2022, the trial court entered judgment in the dissolution proceeding on the parties' marital settlement agreement.

In the settlement, the parties agreed to joint legal and physical custody of their minor children.  The parties agreed "that they must meet, confer, and agree in writing to any and all decisions" on the children's participation in extracurricular activities.  And the parties agreed "not to interfere with the schedule of the other parent without that parent's consent.  Neither parent will schedule activities for the children during the other parent's scheduled parenting time without the other parent's prior written agreement."  The parties agreed that mother could take "specified children to . . . specified extra-curricular activities during [f]ather's custodial time during the calendar year" of 2022; and mother agreed to grant father an equivalent option to take the children to unspecified extracurricular activities of his choosing during mother's time.  But the parties did not agree to any extracurricular activities beyond 2022.

The parties agreed that they will "equally share in the cost of mutually agreed upon extra-curricular activities for the children."  The settlement did not require cost-sharing for extracurricular activities unilaterally scheduled by one parent.

### B.   *Mother's Request for Order and Father's Response*

In April 2023, mother filed a request for order on Judicial Council form FL-300 asking the court to address, among other topics, the children's extracurricular activities. On that subject, mother requested specified orders concerning transportation to extracurricular activities scheduled during father's custodial time and directing "[f]ather to pay his half of the children's extracurricular activities."  Mother did not check the boxes on form's first page to indicate a request for a change in child support or ask for any change in father's base support obligation.  In their papers the parties argued their

differing views on extracurricular activities (among the other issues not implicated in father's appeal).

Mother asserted that father "refused to allow the children to participate in any non-agreed[-]upon extracurricular and school activities during his custodial time." According to mother, this resulted in the eldest missing two scheduled performances and some or all the children missing their back to school night. By 2023, this precluded mother from scheduling any extracurricular activities during father's custodial time because the settlement agreement only addressed specific activities in 2022. Mother argued that father was harming the children by refusing to take the children to extracurricular activities.

Father responded that mother was enrolling the children in too many activities and vilifying father when he refused to agree to new activities mother had discussed with the children. Father said he would agree to "a reasonable number of activities" but not to mother's having "a 'blank check' to enroll the children in as many activities as possible without regard to [father's] schedule or whether this high level of activity is indeed in the children's best interest." Father stated that the parties had agreed to art classes for two of the children and soccer would potentially be "the next mutually agreed upon extracurricular activity." Father proposed limitations on the unilateral selection of extracurricular activities and sharing of costs only for agreed activities, with only the enrolling parent paying for other activities.

## C.    *The Hearing*

Mother, through counsel, sought only an order "that the children are *at least* enrolled in one extracurricular activity and that both parents shall facilitate transportation"; father, through counsel, argued that "*just* one activity per quarter should cross over each parents' time share per child." (Italics added.) Observing that the parties' positions seemed close, the trial court directed the parties to meet and confer before resuming the hearing. The trial court added that it had "no problem with the limit

3

of one" extracurricular activity requested by father but expressed concern that father was defining extracurricular activities too broadly by extending it to a child's occupational therapy.

On resumption of the hearing, mother's counsel reported that the parties had reached "some interim agreements." Counsel for both parties attempted to state the agreements for the record, but their efforts sparked disagreements about logistics. The gist of the agreements was that (1) the eldest child would complete cheerleading that month and begin soccer the following month, and (2) the younger children would begin soccer and tennis, respectively. The parties did not agree to the allocation of costs, except to support deferring the apportionment of cheerleading costs to a later date.

The trial court orally ruled that the eldest child would complete cheerleading that month before enrolling in soccer. The trial court ruled that the parties would equally share the cost of soccer, but did not address the cost of cheerleading. The trial court ruled that the younger children would be enrolled in soccer and tennis, respectively, and that the parties would equally share the cost of those activities.

The court directed mother's counsel to prepare the written order.

## D. *The Trial Court's Written Order and Father's Appeal*

The next month, the trial court issued a written order that was prepared by mother's counsel.[1] The order was not approved by father or his counsel as conforming to the trial court's order—the signature line for that purpose is blank. It is unclear from father's appellate appendix whether mother's counsel served the proposed order on father, whether father responded to the proposed order, or, if father was served and failed

---

[1] The register of actions does not reflect any filings or hearings pertaining to this matter between the hearing and the filing of the written order.

4

to respond, whether mother's counsel submitted the proposed order with the required correspondence. (Cal. Rules of Court, rule 5.125(b)–(c).)[2]

In its written order, the trial court ordered that the "children shall be enrolled in no less than one . . . extracurricular activity per child. Both parents shall support, encourage and facilitate participation in all practices, games, and performances moving forward. The parties shall equally share in the costs of all activities. Those activities for the children [were] as follows:" (1) the oldest child will continue cheerleading through May (the month of the hearing), and then will be enrolled in soccer; and (2) the younger two children will be enrolled in soccer.

Father timely appealed.

## II.    DISCUSSION

Mother has not filed a respondent's brief. Her failure to do so "means that we 'decide the appeal on the record, the opening brief, and any oral argument by the appellant' [citations], examining the record and reversing only if prejudicial error is shown." (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 334.)

Father raises two challenges to the order. First, he contends that the provision requiring the parties to "equally share in the cost of all activities" modified the final judgment, which provided only that the parties shared the costs of "mutually agreed upon" extracurricular activities. He contends that the trial court deprived him of due process by making this modification without notice. But we disagree with his interpretation of the order.

Second, father contends that the trial court modified the judgment without notice or a showing of changed circumstances by ordering him to share in the costs of specific activities. But father did not preserve these contentions for appeal.

---

[2] Undesignated rules references are to the California Rules of Court.

**A.** *Construing "All Activities" and the Scope of the Order*

The order as drafted is ambiguous. It provides that the parties are to equally share the costs of "all activities." But in the next sentence identifies "[t]hose activities . . . as follows" with a list that includes only a set of specified activities. So there is room for reasonable disagreement as to whether costs are shared as to "all activities" or only "those [following] activities."

We construe the "activities" as to which father is ordered to pay an equal share in the costs as limited to "those activities" listed in the order: cheerleading in May 2023 for the eldest child and soccer for each of the three children. This resolves the ambiguity in the counsel-prepared order in a manner consistent with the trial court's oral ruling. While the use of "all activities" and "those activities . . . are as follows" is inartful, we understand the intended effect to be that the parties will equally share in the cost of "all the following activities."

We acknowledge that there are some ways in which the trial court's written order unambiguously deviates from its oral ruling—it apportions the costs of cheerleading and for one child replaces tennis with soccer.[3] In these instances, the written order controls. (See *In re Marcus* (2006) 138 Cal.App.4th 1009, 1016 (*Marcus*) [a court may change its ruling on a motion until the ruling is reduced to writing and becomes the order of the court].) We infer that the trial court considered these unambiguous changes and elected to adopt them. (See rule 5.125(f) ["Before signing a proposed order submitted to the court without the other party's approval, the court must first compare the proposed order after hearing to the minute order; official transcript, if available; or other court record"].) But these changes do not mean that the trial court intended a new ruling with broader

_____

[3] Father takes no issue with this substitution of tennis for soccer.

6

implications about cost-splitting for all extracurricular activities.[4]  We are not persuaded that such a ruling was intended.

**B.**     *The Specific Extracurricular Costs Addressed in the Order*

As construed to apportion only the costs of cheerleading in May 2023 and soccer, father contends that the order modifies the judgment without notice or a showing of changed circumstances.  Specifically, he argues that his obligation to pay an equal share of mutually agreed activities has been expanded to pay an equal share of (specified) court-ordered activities.  But father did not object on those grounds in the trial court.  So we conclude that his appellate contention is forfeited.

"It is axiomatic that arguments not raised in the trial court are forfeited on appeal." (*Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1038.)  "It is unfair to the trial judge and the adverse party to attempt to take advantage of an alleged error or omission on appeal when the error or omission could have been, but was not, brought to the attention of the trial court in the first instance."  (*Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 912; see also *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184–185, fn. 1.)  Forfeiture may extend to objections rooted in due process.  (See *In re Dakota H.* (2005) 132 Cal.App.4th 212, 222 [finding forfeiture of claim that due process required a new finding of parental unfitness before proceeding to a permanency hearing]; *D.Z. v. L.B.* (2022) 79 Cal.App.5th 625, 632–633.)

Father could have objected to the rulings he is now challenging, but he did not.  As to the costs associated with soccer, the transcript demonstrates that father did not object when the trial court announced its oral ruling to require equal cost sharing for soccer and

---

[4] Mother is entitled to unilaterally schedule extracurricular activities during her custody time, so if the order were understood to cover "all" extracurricular activities it would require father to pay for activities mother unilaterally scheduled.  There is no suggestion in our record that such a result was intended.

7

tennis. As to the costs associated with cheerleading, father noted his disapproval of the activity and made clear he "want[ed] no part in it," which we understand to include any responsibility for its costs. But he has neither asserted nor shown that mother failed to comply with her obligations to serve the proposed order before the court entered it. (See rule 5.125(b)–(c).) We accordingly infer that father had an opportunity to object to the proposed order, including the apportionment of cheerleading costs not addressed by the trial court's oral ruling, and did not do so. We recognize that, during the hearing, father remarked that mother's counsel had "a history" of preparing inaccurate orders after hearing. And we acknowledge that while the court's oral ruling did not apportion cheerleading costs, the order after hearing did. But because it was incumbent on the trial court to "first compare the proposed order after hearing to the minute order; official transcript, if available; or other court record" (rule 5.125(f)) before signing it without father's approval as to form, we must infer that the trial court intended the unambiguous changes in its ruling reflected by the written order. If father in the future has concerns that mother's counsel is not accurately reducing the trial court's oral rulings to writing, father may protect his rights using the process set forth in rule 5.125. On this record, he has not met his appellate burden. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 609 [" '[f]ailure to provide an adequate record on an issue requires that the issue be resolved against [the appellant]' "].)

If father had objected that he had been denied notice that mother was requesting cost-sharing for new extracurricular activities, this objection would have been meritless. Mother identified costs as an issue requiring further orders, and the discussion at the hearing reflected that the parties understood that apportionment of costs would be resolved by the court if the parties were unable to agree. Had father raised the issue of changed circumstances pertaining to cost sharing, the trial court could have considered those arguments before ordering the costs of the extracurricular activities to be shared. (See *Marcus*, *supra*, 138 Cal.App.4th at p. 1016 [oral motion rulings do not become court

8

order until reduced to writing].)[5]  Father's choice to make this argument for the first time on appeal denied both mother and the trial court the opportunity to address his objection that changed circumstances were lacking, a well-established basis for treating his objection as forfeit.

We also question father's characterization of the trial court's cost-sharing order as a modification of the parties' agreement to share the costs of mutually agreed-upon activities, rather than an implementation of that agreement.  Both parties at the hearing said that they were willing to accept a compromise in which the children were enrolled in one extracurricular activity spanning both of their custody time.  From there, the focus of the hearing was on identifying extracurricular activities for the children.  Although father expressed strong reservations about their eldest child participating in cheerleading, the parties agreed to a list of activities that included the eldest child finishing the month of cheerleading and the children enrolling in soccer and tennis.  As to soccer and tennis, father agreed that "[t]hese activities are fine and good for our children."  As to cheerleading, father agreed to swap custody days to facilitate the eldest child's participation "in the spirit of agreement" even though he did not "approve of this activity."[6]  Simply, the parties agreed to all activities identified in the order before the trial court directed them to split the costs.  That follows the settlement agreement.

---

[5] " 'There are no rigid guidelines for judging whether circumstances have sufficiently changed to warrant a child support modification.'  . . .  The ultimate determination of whether the individual facts of the case warrant modification of support is within the discretion of the trial court."  (*In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 556.)

[6] Father at oral argument explained that he had intended this exchange of custodial days as a means of preserving his objection to the sharing of costs.  But absent a clear statement to this effect at the hearing, the trial court would reasonably have taken this negotiated accommodation as a reluctant agreement to the activity for the limited time specified and therefore consonant with the cost-sharing terms of the judgment.

9

Father points out that he objected at other points: (1) he argued that there were no changed circumstances to support a modification of custody; and (2) he objected when mother's counsel told the court that he had agreed to front the costs of cheerleading with the final disposition reserved for later, clarifying that he had agreed only to defer the issue until later. We recognize that the trial court later elected to resolve a costs issue that the parties had agreed to defer. But at no point did father object to the trial court's resolution of the costs issue, notwithstanding the parties' agreement to defer. Nor did he articulate his present view that the trial court's order of equal cost sharing for the activities specified was inconsistent with the judgment or the marital settlement agreement. He accordingly forfeited this claim for appeal.

### III.   DISPOSITION

The June 12, 2023 order is affirmed.

_____
LIE, J.

WE CONCUR:

_____
DANNER, Acting P. J.

_____
BROMBERG, J.

*Stubbs v. Stubbs*
H051346