Filed 12/16/22  In re Villafane CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ROMUALDO VILLAFANE<br><br>on<br><br>Habeas Corpus. | D080440<br><br><br>(San Diego County<br>Super. Ct. No. 17FL003562S) |
| CLEUSILENE VILLAFANE,<br><br>    Real Party in Interest. | |

ORIGINAL PROCEEDING on petition for writ of habeas corpus. Petitions denied.  Remanded with instructions.

John L. Staley, by appointment of the Court of Appeal, for Petitioner.

No appearance for San Diego Sheriff's Department, Respondent.

Sheila O'Connor, by appointment of the Court of Appeal, for Real Party in Interest.

INTRODUCTION

The trial court found Romualdo Villafane guilty of three separate counts of contempt for violating child custody orders made during the pendency of a marital dissolution proceeding between him and Cleusilene

Villafane.[1]  The court sentenced Romualdo to 96 hours in county jail on one count, and 120 hours in county jail, suspended pending compliance with additional court orders, on each of the other two counts.  Romualdo filed a "Petition of Writ," which this court construed as a petition for writ of habeas corpus, challenging the orders and requesting a stay of the sentence.  We issued a temporary stay and an order directing the respondent, the San Diego County Sheriff's Department (the Sheriff's Department), to show cause why the relief should not be granted.  We also appointed counsel for Romualdo and directed counsel to file a supplemental petition.  The Sheriff's Department declined to file a return, but real party in interest, Cleusilene, filed a response, and asks this court to treat it as a return.  We decline to treat the response as a return, but conclude, after reviewing the supplemental petition and response, that Romualdo has failed to demonstrate he is entitled to relief.  Consequently, we are compelled to deny both the original and supplemental petitions, remand the matter to the trial court to set a new date upon which Romualdo must present himself to the San Diego County Central Jail, and vacate the temporary stay.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*Trial Court Proceedings*

Romualdo and Cleusilene have two children together.  They have been involved in dissolution and child custody proceedings since at least 2017.

In October 2021, Cleusilene initiated contempt of court proceedings against Romualdo by filing an order to show cause and affidavit for

---

[1]     We refer to Romualdo and Cleusilene Villafane by their first names to avoid confusion.  No disrespect is intended.

contempt.[2] Cleusilene alleged Romualdo willfully disobeyed six separate court orders. Relevant here, Cleusilene asserted, in count 1, that Romualdo willfully failed to attend the Kids' Turn Family Workshop as ordered by the trial court on at least three separate occasions. In count 5, she asserted Romualdo willfully took their daughter on vacation without providing the requisite notice and basic itinerary before departure. And, in count 6, Cleusilene asserted Romualdo willingly disobeyed another court order by taking their daughter from a recreation center event on Cleusilene's custodial time without her knowledge or consent.

The trial court held a hearing on the contempt charges on April 6, 2022. Cleusilene testified in support of the order to show cause. Romualdo was represented by appointed counsel, but chose not to testify, and instead invoked his Fifth Amendment privilege against self-incrimination when Cleusilene's counsel asked to question him. After taking the matter under submission, the trial court issued a written order finding Romualdo guilty on counts 1, 5, and 6. The court found Romualdo not guilty on the remaining charges; not because he complied with the underlying orders, but because the

---

[2] Code of Civil Procedure section 1211, subdivision (a), provides, in relevant part, "[w]hen the contempt is not committed in the immediate view and presence of the court, or of the judge at chambers, an affidavit shall be presented to the court or judge of the facts constituting the contempt, or a statement of the facts by the referees or arbitrators, or other judicial officers." Relevant here, subdivision (b), states, further, "[i]n family law matters, filing of the Judicial Council form entitled 'Order to Show Cause and Affidavit for Contempt (Family Law)' shall constitute compliance with this section." (Code Civ. Proc., § 1211, subd. (b).) All further undesignated statutory references are to the Code of Civil Procedure.

orders were either vague or not executed by the date upon which he was ordered to comply.[3]

The trial court held a separate hearing to discuss sentencing on May 4, 2022. Romualdo's counsel argued the court should stay any jail sentence it might impose pending probation since this was the first time Romualdo had been found guilty of contempt. He represented that Romualdo was ready and willing to cooperate with any terms of probation, including compliance with any outstanding orders. Cleusilene's counsel responded that jail time was appropriate for at least one of the counts, because Romualdo had a history of contemptuous and vexatious conduct before the court, and had now been found guilty on three separate counts of contempt.

Towards the end of the hearing, Romualdo asked to speak on his own behalf. He asserted his appointed counsel had provided ineffective assistance of counsel, and asked the trial court to reconsider its previous findings of contempt as a result. He told the court he had given his attorney "tons of exculpatory evidence" but counsel failed to present the evidence in his defense. He said he did not attend the Kids' Turn program because Cleusilene did not follow the original order that the family attend together, and then did not make their oldest daughter available to attend with him. Regarding count 5, he asserted that he did give Cleusilene notice of the vacation dates. He conceded that he "forgot" to give her more detailed information regarding the trip, but asserted he did provide the information

---

[3]    Cleusilene listed six counts in her order to show cause and affidavit for contempt, but also checked a box requesting attorney fees and costs, and included additional facts regarding unpaid sanctions. The trial court appears to have construed these additional claims as count 7, which it then dismissed without prejudice for lack of specificity in the pleadings.

4

the same day that she asked. Finally, he asserted the violation alleged in count 6 was previously addressed in the context of a hearing on Cleusilene's request for a domestic violence restraining order, which the court denied. In response, Cleusilene's counsel reminded the court that Romualdo had elected not to testify at the previous hearing. The trial court declined to reconsider its ruling.

In a written order dated May 6, 2022, the trial court sentenced Romualdo to 96 hours in the county jail on count 1. The court ordered that he present himself at the jail for processing at 8:00 a.m. on May 27. The court sentenced Romualdo to 120 hours in county jail on each of counts 5 and 6, but suspended the sentences on the condition that he complete the Kids' Turn workshop by September 1, 2022, and that he comply with certain other orders of the court by their specified dates.

## II.

### *Appellate Court Proceedings*

On May 25, 2022, just two days before he was to present himself to the county jail, Romualdo filed a "Petition of Writ" and request for an immediate stay of the trial court's sentencing order in this court.[4] Romualdo was not represented by counsel. He argued that his appointed trial counsel was ineffective for having failed to present exculpatory evidence, double jeopardy applied, and the sentence was cruel and unusual. He provided copies of communications with his lawyer, in which he provided the allegedly

---

[4] In the petition, Romualdo alleged he filed a motion for reconsideration of the contempt charges and an ex parte request to stay the sentence in the trial court, but the trial court refused to hear both motions without explanation. He provided copies of his own filings, but did not include any corresponding orders from the trial court.

5

exculpatory evidence, but did not include transcripts from the trial court proceedings. He further asserted the sentence would result in significant negative employment impacts and place him in severe risk of physical harm because he was employed as a federal law enforcement officer.

On May 25, 2022, this court issued an order temporarily staying the trial court's order that Romualdo present himself to the San Diego County Central Jail on May 27. The next day, we issued an additional order appointing counsel for Romualdo, directing appointed counsel to file a supplemental petition, and ordering the Sheriff's Department to show cause why the relief requested should not be granted. The order specified: "Respondent may file a return within 30 days after the supplemental petition is filed. Real party in interest Cleusilene Villafane may file a response to the supplemental petition within 30 days after the supplemental petition is filed." Cleusilene then filed a motion for appointed counsel, which we granted.

In his supplemental petition, prepared by appointed counsel, Romualdo asserts the trial court abused its discretion by sentencing him to 96 hours in county jail; there was insufficient evidence to support the conviction on count 5; and his appointed trial counsel was ineffective for having failed to present exculpatory evidence and/or defenses as to counts 1 and 6. After the supplemental petition was filed, Cleusilene filed a motion informing this court that the Sheriff's Department would not be filing a return and requested that her response be treated as the return. We deferred Cleusilene's request to be considered with the merits. Cleusilene filed a response in the form of a return, and Romualdo filed a "traverse to reply" (capitalization omitted), but neither party addressed Cleusilene's pending motion to treat her response as a return.

6

## DISCUSSION

### I.

*Cleusilene's Request to Treat Her Response as a Return Is Denied*

Before turning to the merits of Romualdo's original and supplemental petitions, we address Cleusilene's request that we treat her response as a return, and hereby deny it.

A writ of habeas corpus challenges the legality of an individual's confinement, and, thus, it is typically the custodian—or, as in this case, the constructive custodian—of the confined person that submits a return justifying the confinement. (See *People v. Duvall* (1995) 9 Cal.4th 464, 475; see also *People v. Romero* (1994) 8 Cal.4th 728, 738 ["the order to show cause 'directs the respondent custodian to serve and file a written return' "].) Here, the trial court ordered Romualdo to present himself to the San Diego County Jail to serve his 96-hour sentence, so the Sheriff's Department is both the constructive custodian and the respondent. As noted, though, the Sheriff's Department declined to file a return.

Cleusilene asserts we should consider her response as a return because she is the party that will be most affected by the trial court's order. But it is undisputed that she is not the custodian, and she provides no authority establishing the right of any party other than the custodian to file a return to a writ of habeas corpus.

As Cleusilene points out, rule 8.385 of the California Rules of Court allows the reviewing court to request an informal response to a petition for writ of habeas corpus from either the respondent, the real party in interest, or any other interested person before ruling on the petition. (Cal. Rules of Court, rule 8.385, subd. (b)(1).) Rule 8.385 states that if the petitioner has made the required prima facie showing, the reviewing court "must issue an

7

order to show cause," and "may order *the respondent* to file a return" in the superior court, or, alternatively, in the reviewing court. (*Id.*, subds. (d)–(f), italics added.) Rule 8.386 governs if the court issues an order to show cause returnable to the reviewing court, and states, "[u]nless the court orders otherwise, any return must be served and filed within 30 days after the court issues the order to show cause." (Cal. Rules of Court, rule 8.386, subd. (b)(1).) Neither rule contemplates the filing of a return from any party other than the respondent, and Cleusilene provides no other authority indicating this court may consider a response by a real party in interest as a return in this context.

We have considered the legal arguments presented in Cleusilene's response, but hereby deny her request to treat the response as a return.

II.

*Romualdo Has Failed to Demonstrate He Is Entitled to Relief*

As the petitioner in a habeas corpus proceeding, Romualdo bears the burden of pleading and proving sufficient grounds for relief. (*In re Champion* (2014) 58 Cal.4th 965, 1006–1007; *In re Serrano* (1995) 10 Cal.4th 447, 456.) Even where the reviewing court finds the petitioner has made the required prima facie showing and issues an order to show cause, the petitioner must still prove facts establishing a basis for relief by a preponderance of the evidence. (*Champion*, at p. 1007.) In the absence of a return, the reviewing court will generally accept the undisputed factual allegations in the petition as true. (*Serrano*, at p. 456.) However, the record itself may contain facts that contradict or refute allegations made in the petition. (*Ibid.*)

Here, after reviewing the supplemental petition, and the associated record, we conclude Romualdo has not met his burden of proving sufficient grounds for relief.

8

A.    *Sufficient Evidence Supports the Conviction on Count 5*

Romualdo contends, in his supplemental petition, that the evidence was insufficient to support a finding of guilt as to count 5. Count 5 alleged Romualdo willfully took the couple's daughter on vacation without providing Cleusilene with the court-ordered notice and basic itinerary before departure.

"The elements of proof necessary to support punishment for contempt are:  (1) a valid court order, (2) the alleged contemnor's knowledge of the order, and (3) noncompliance." (*In re Marcus* (2006) 138 Cal.App.4th 1009, 1014.) "The order must be clear, specific, and unequivocal," and the failure to comply must be willful. (*Ibid.; In re Grayson* (1997) 15 Cal.4th 792, 794.) "In writ proceedings to review an adjudication of contempt, our inquiry is whether there was any substantial evidence before the trial court to prove the elements of the contempt." (*In re Marcus*, at p. 1015.)

The trial court found:  (1) The court issued a valid order on three separate occasions that stated:  "Either parent may vacation with the children each year for up to four weeks or two weeks twice a year.  The vacationing parent shall notify the other parent in writing of their vacation plans a minimum of 30 days prior to departure and shall provide the other parent with a basic itinerary to include dates of departure and return, destinations, flight information and telephone numbers for emergency contact." (2) Romualdo was present, either in court or virtually by video conference when the court issued the orders.  And (3) Romualdo "violated the orders by failing to provide [Cleusilene] with a basic itinerary to include dates of departure and return, destinations, flight information and telephone numbers for emergency contact."

Romualdo does not dispute that the orders were valid or that he had knowledge of them.  He asserts only that the evidence was insufficient to

9

prove that his violation of the orders was willful. The record does not support his contention. The evidence at trial established that Romualdo told Cleusilene, in January 2021, "[b]oth girls will be on vacation with me for the month of June." He did not notify Cleusilene that they would be traveling outside the state and did not provide the court-ordered basic itinerary. Cleusilene only found out that they were traveling because her daughter mentioned it to her the day before their departure. And, even then, despite Cleusilene's repeated requests, Romualdo failed to provide complete information regarding their itinerary.

Romualdo argues Cleusilene did not ask for additional information until after they left, but nothing in the order required Cleusilene to affirmatively ask for the itinerary. Rather, the order required Romualdo, as the vacationing parent, to provide "a basic itinerary to include dates of departure and return, destinations, flight information and telephone numbers for emergency contact." The evidence presented by Cleusilene established that he did not do as he was ordered.

We therefore conclude the record itself, including the hearing transcripts provided in the supplemental petition, contains substantial evidence to support the conviction on count 5.

B. *Romualdo Has Failed to Establish His Appointed Trial Counsel Was Ineffective*

Romualdo asserts further, in both his original and supplemental petitions, that his trial counsel provided ineffective assistance of counsel by failing to present exculpatory evidence. In his original petition, he alleged generally that his counsel failed to provide exculpatory evidence as to each of the three counts on which he was convicted. In the supplemental petition, he has limited his claim of ineffective assistance of counsel as to counts 1 and 6 only. Specifically, he asserts his trial counsel failed to present a mistake-of-

10

fact defense as to count 1, and that he failed to present exculpatory evidence as to count 6.

To obtain relief in a habeas corpus proceeding on a claim of ineffective assistance of counsel, the petitioner must prove counsel's " ' " 'performance was deficient because it "fell below an objective standard of reasonableness . . . under prevailing professional norms." ' " ' " (*In re Hernandez* (2019) 33 Cal.App.5th 530, 543, quoting *People v. Salcido* (2008) 44 Cal.4th 93, 170.) " ' " 'If the record "sheds no light on why counsel acted or failed to act in the manner challenged," an appellate claim of ineffective assistance of counsel *must be rejected* "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." ' " ' " (*In re Hernandez*, at pp. 543–544, italics added.) " ' " 'If a defendant meets the burden of establishing that counsel's performance was deficient, he or she also must show that counsel's deficiencies resulted in prejudice, that is, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ' " ' " (*Id*. at p. 544.)

Romualdo has not shown that his counsel's performance was deficient, or that he was prejudiced as a result. Romualdo does not provide any evidence of trial counsel's reasons for failing to present the allegedly exculpatory evidence. He does not provide a declaration from trial counsel, nor does he provide any explanation for the omission. Regardless, Romualdo has not established the failure to present the asserted mistake-of-fact defense or the failure to provide the allegedly exculpatory evidence would have resulted in a better outcome as to any of the asserted counts of contempt.

1.	*Count 1*

Count 1 alleged that Romualdo willfully failed to attend the Kids' Turn Family Workshop as ordered by the trial court on at least three separate occasions. Here, Romualdo asserts he told his trial counsel that he "believed it was permissible to pursue counseling through his work offered insurance in lieu [of] attending the Kids' Turn Family Workshop," but counsel did not present the evidence or argue a mistake-of-fact defense at the hearing.

Romualdo relies exclusively on the original order, from December 2017, in which the trial court adopted a Family Court Services (FCS) recommendation and ordered that the family "shall complete [the] Kids' Turn Family Workshop together" and "Parents shall enroll by 12/29/17." The order goes on to state, in a different paragraph, "[p]ossible resources include: private insurance." Romualdo asserts he told his attorney that he believed this language permitted him to attend an alternate free program through his work, that Cleusilene and the children completed the Kids' Turn Family Workshop without him, and that he tried several times to get Cleusilene to enroll the children in the free program provided by his work, but his attorney failed to present the evidence at the contempt hearing. The claim fails for two reasons.

First, "[w]hen a person commits an act based on a mistake of fact, his guilt or innocence is determined as if the facts were *as he perceived them*." (*People v. Scott* (1983) 146 Cal.App.3d 823, 831, italics added.) Romualdo did not testify, as it was his right, at the contempt hearing. But without Romualdo's testimony, there was no way to establish his perceived understanding of the order and, thus, no way to prove the defense. And, although he provides a declaration setting forth his alleged misperception in

12

this court, he does not explain why he did not testify in the trial court, or assert that he would have done so absent advice from appointed counsel.

Second, even if the asserted evidence were presented, Romualdo's mistake-of-fact defense lacks merit. The December 2017 order was the first of several orders requiring Romualdo to attend the Kids' Turn workshop. In January 2020, the trial court adopted another set of FCS recommendations dated August 6, 2019, which required Romualdo, on his own, to "enroll in and successfully complete the Kids' Turn . . . co-parenting program . . . by March 1, 2020." Romualdo apparently failed to comply with that order as well, and in November 2020, the court once again adopted FCS recommendations that similarly required Romualdo, alone, to "enroll in and successfully complete the Kids' Turn . . . co-parenting program . . . by January 30, 2021." The second and third orders make no mention of private insurance or any other program. However, they do contain separate provisions requiring all four family members to *also* participate in individual counseling. The trial court referenced each of these three orders in its written contempt order, and specifically stated that Romualdo "was present virtually via MS Teams on November 10, 2020 when the court *again* ordered [him] to attend the [Kids'] Turn Workshop." (Italics added.) Romualdo does not dispute he was aware of these subsequent orders, and does not provide any explanation for his failure to attend the workshop even after the court reiterated, twice, that he was required to do so.

2.     *Count 6*

Count 6 alleged Romualdo willingly disobeyed another court order by taking their youngest daughter from a recreation center event on Cleusilene's custodial time without her knowledge or consent. Romualdo admits he took their daughter from the recreational center on Cleusilene's parenting time

without Cleusilene's permission.  He asserts,  however, that the trial court also ordered that both parents were to " 'ensure that the children shall always be under the supervision of a competent adult during his/her parenting time,' " and that his trial counsel failed to present evidence that his daughter was not under adult supervision when he arrived at the center.  This argument fails for the simple reason that Romualdo provides no argument or authority, and we are not aware of any, to establish that Cleusilene's alleged violation of a different order somehow justified or excused his own violation.

Further still, the only evidence Romualdo offers to support the contention is his own statement that he did not *see* any adults supervising the children when he arrived at the center.[5]  But, as we have already explained, Romualdo chose not to testify at the hearing.  Thus, when counsel raised a similar argument at the conclusion of the hearing, the trial court interrupted and stated:  "Well, no. . . . there's no testimony from Mr. Villafane about these contentions.  You can't argue that."  Romualdo now says he would have been willing to testify to that fact, but, again, he provides

---

[5]     Although the record before this court does not include an actual copy, it does contain references by both parents to a sign-in sheet maintained by the recreation center on the night of the alleged incident, the presence of which at least suggests that there was some level of adult supervision during the event.

no explanation as to why he did not testify, nor does he allege that trial counsel improperly advised him against testifying.[6]

     3.    *Count 5*

Although he does not raise it in his supplemental petition, to the extent Romualdo intended to assert that his counsel provided ineffective assistance as to count 5 in his original petition, that claim fails as well. Count 5 alleged Romualdo willfully took the couple's daughter on vacation without providing Cleusilene with the required notice and basic itinerary before departure. Romualdo contends he told his trial counsel that he did tell Cleusilene about the vacation in advance, but that he did not give her an itinerary because his precise plans were in flux and he believed she would ruin the vacation if she had the information.

The only evidence Romualdo provided to his trial counsel, beyond his own self-serving statement, is a set of text messages in which he told Cleusilene that he was taking the girls for vacation in June (without providing an itinerary), and the same exchange that Cleusilene submitted to the trial court, in which he provided flight information after they had already left. As with the other claims, Romualdo has not established that he would have testified in his own defense absent the advice of his trial counsel. And, regardless, in the notes he provided to his trial counsel, Romualdo essentially

---

[6]    In his original petition, Romualdo asserted a claim of double jeopardy and alleged that "the same alleged offense" was previously adjudicated. A review of the record reveals the prior proceeding was a hearing on a restraining order, in which one of the contentions was that Romualdo took his daughter from the recreation center without permission and refused to return her until Cleusilene notified the police. The trial court found Romualdo "has shown bad judgment, but no domestic violence," and denied the request for a restraining order. In doing so, the court made no findings as to whether Romualdo's actions violated any court orders.

conceded that he intentionally did not comply with the order because he was worried that Cleusilene would interfere with his travel plans if she had a complete itinerary. Again, he presents no argument or authority establishing that his concerns somehow excused him from failing to obey a court order.

C. *Romualdo Has Failed to Demonstrate the Trial Court Abused Its Discretion by Its Sentencing Choice*

Romualdo's final contention is that the trial court's order sentencing him to 96 hours in county jail was "excessive" and an abuse of discretion. We review the trial court's sentencing decision only for an abuse of that discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377.) In doing so, "we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' " (*Ibid*.) "Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id*. at p. 377.)

Applying these standards, we conclude Romualdo has not met his burden in establishing an abuse of discretion. He asserts only that his violations were "minor" and this was his first time being found guilty of contempt. But as he concedes, the relevant statute provides, "[u]pon a *first finding of contempt*, the court shall order the contemner to perform community service of up to 120 hours, *or* to be imprisoned up to 120 hours,

16

for each count of contempt." (§ 1218, subd. (c)(1)(A), italics added.) The statute makes no mention of aggravating or mitigating factors, or anything else the trial court must consider when imposing a sentence. Rather, the trial court has discretion to choose the appropriate sentence so long as it complies with the statute, which expressly permits the imposition of jail time of up to 120 hours, even for a first offense. (See *In re Stanley* (1981) 114 Cal.App.3d 588, 592 ["Petitioner's additional argument that the sentence imposed was an abuse of discretion is without merit; the penalty is well within statutory limits."].)

Cleusilene's counsel asserted Romualdo had a history of being overly litigious and failing to comply with court orders, and argued jail time was necessary to address these ongoing abuses. The trial court apparently agreed and exercised its discretion to impose jail time of less than 120 hours on count 1. Although harsh, Romualdo has failed to establish the court abused its discretion by doing so. Even if we believe the trial court could have made a different sentencing decision, on the record before us, we see no basis to conclude the sentence was impermissibly excessive or unjust.[7]

Romualdo also asserted, in his original petition, that the sentence was cruel and unusual because it would expose him to risk of physical harm and loss of income. Romualdo does not maintain these claims in his supplemental petition, nor does he provide any evidence to support them. Romualdo did not file a declaration, or any evidence regarding his employment, with his original petition, and although he did provide declarations with both the

---

[7]     Unfortunately, the contentious circumstances of this custody dispute are not uncommon in family law cases. We do not mean to signal by the result here that family courts should routinely impose jail time for violations, even repeat violations, of child custody orders.

17

supplemental petition and the traverse, neither address his employment status or the alleged impact of his position as a federal officer.[8]  Accordingly, Romualdo has not established that he is entitled to relief on these grounds.

## DISPOSITION

The original petition and the supplemental petition are denied, and the matter is remanded to the superior court to set a new date upon which Romualdo must present himself to the San Diego County Central Jail.  The stay issued by this court on May 25, 2022, is vacated.

DO, J.

WE CONCUR:

IRION, Acting P. J.

BUCHANAN, J.

---

[8]    In the declaration attached to the "Traverse to Reply" (some capitalization omitted), Romualdo avers that he has now completed the Kids' Turn program.  He concedes his belated compliance is not a defense, but asks this court to consider it as a mitigating factor.  We have done so but are not persuaded that compliance at this point should mitigate the sentence imposed.