Filed 11/14/25  Marriage of Stubbs CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of APRIL and MICAH STUBBS. | H051518, H051866, H051966, H051967, H051968, H051969 (Santa Clara County Super. Ct. No. 21FL002119) |
| APRIL STUBBS, Respondent, v. MICAH STUBBS, Appellant. | |

Appellant Micah Stubbs (father) and respondent April Stubbs (mother) dissolved their marriage in April 2022.  By stipulated judgment, they share legal and physical custody of their minor children.  But after disputes about the children's extracurricular activities led to litigation, the trial court appointed minors' counsel over father's objection.  Father noticed appeals from this appointment and from several subsequent orders related to minors' counsel, including an order requiring him to pay attorney fees for minors' counsel's work on the case.  We dismiss one of father's appeals as premature and affirm the appointment of minors' counsel and the order granting her first application for compensation.

## I.    BACKGROUND

In April 2022, the trial court entered judgment on mother's petition for dissolution and the parties' marital settlement agreement. In the settlement, the parties agreed to joint legal and physical custody of their minor children. The agreement also specified the children's extracurricular activities through 2022, but for 2023 and onward provided that neither parent would schedule extracurricular activities during the other parent's scheduled parenting time without the other parent's written consent. The agreement left in place a "2/2/3" parenting schedule, by which neither parent had care of the children on the same weekdays each week or every weekend.

Disputes over extracurricular activities reached the trial court in fall 2022, and the court initially refused to intervene, explaining that the parties' "different ideas of what [extracurricular activities] they would like the children to participate in" did not constitute a "significant change of circumstances" warranting modification. In December 2022, the court responded to continued complaints on this issue (among others) by agreeing with mother that it could resolve disputes over the children's extracurricular activities for 2023 and later without a significant change in circumstances. But it urged the parties to resolve their concerns about extracurriculars between themselves.

In April 2023, mother filed a request for order addressing, among other disputes, the children's participation in extracurricular activities across the 2/2/3 parenting schedule. In June, the trial court ordered that the "children shall be enrolled in no less than one . . . extracurricular activity per child. Both parents shall support, encourage and facilitate participation in all practices, games, and performances moving forward. The parties shall equally share in the cost of all activities." The court specified those activities: (1) the oldest child would continue cheerleading through May (the month of the hearing) and would then switch to soccer; and (2) the younger two children would begin soccer. The order included a finding that father's position on extracurricular activities was "contrary to . . . the children's best interests." Father appealed the order,

2

which this court affirmed in a nonpublished opinion. (*In re Marriage of Stubbs* (May 28, 2025, H051346).)

At a July review hearing, the parties renewed their disputes about the children's extracurricular activities—mother claimed that father had "disobeyed" the trial court's order for the final sessions of the oldest child's cheerleading; and father claimed that "competitive" soccer violated the agreement for "recreational" soccer. Counsel for both parties warned the court that litigation over extracurricular activities would persist. The court noted that neither "side ha[d] provided . . . a true solution to [the] problem" and opined that no order would be effective because "one side or the other is going to try and thwart the order if they disagree with it." The court doubted "that either side, specifically [father's] side, more so than [mother's] side, . . . is at all inclined to put the children first . . . instead of putting their own values first." The court made no additional orders at the hearing but told the parties the next week that it intended to appoint counsel to represent all three children.

On September 27, the trial court heard the parties on its own motion. The court reiterated its concern that the parties' respective positions about extracurricular activities reflected their own interests rather than the children's and explained that minors' counsel could be helpful on this subject. After hearing father's contrary argument, the court ordered the appointment of minors' counsel for "the limited basis of providing the [c]ourt with information about extracurriculars on behalf of the clients." The court set the next review hearing for November 9, 2023 "to give [as yet unidentified minors' counsel] about six weeks of time to meet with this family." The court denied mother's request to shorten time for preparation and submission of the proposed findings and order after hearing. (See Cal. Rules of Court, rule 5.125.)

On September 29, the trial court issued its form order appointing Sue Saign as minors' counsel. Father requested a statement of decision and then noticed his appeal from the September 29 order.

On November 6, the trial court issued its findings and order from the September 27 hearing. The order reflected that minors' counsel was appointed to provide the court "with information about extracurriculars on behalf of the" three minor children and that the court would consider expanding the scope of the appointment if "minors' counsel presents" to the court a good reason to do so. The parties and minors' counsel were ordered to appear at a hearing for "review and identification of [minors'] counsel" later that month.

Father failed to persuade the trial court that his appeal automatically stayed the September 29 order and any other proceedings involving minors' counsel. At the November hearing, Saign reported that she had reviewed the file, met the children, and reviewed mother's intake forms, but that father had not returned any intake forms. Father refused to engage with Saign until his appeal was resolved. Saign expressed concern about the children and—highlighting "attendance" and "academic" issues as well as their ability to participate in therapy—asked for permission to file a motion to expand the scope of her appointment. Father once again requested a statement of decision, which the trial court denied.

Later that month, Saign submitted her first fee application (seeking about $7,000), a request to expand the scope of her appointment, and an ex parte request for an order shortening time for the hearing on her scope.[1] The fee application was accompanied by Saign's billing records. In support of the requested expansion of the appointment, Saign stated her concern that father was keeping the children from participating in extracurriculars, school, and therapy, that both parents were embroiling the children in adult issues, and that Child Protective Services (CPS) had twice generated reports on the family. Father promptly responded with his own declaration, stating that all the

_____

[1] Although not otherwise in the appellate record, Saign's request to expand her scope is attached to the ex parte order shortening time for a hearing on the request.

4

children's school absences were excused due to illness and that father had cooperated with a CPS telephone interview, after which "the allegations were all closed as unfounded."

A few days before the hearing on Saign's request to expand the scope of her appointment, father filed a demand for a trial on the request. The night before the hearing, father moved to disqualify the trial judge for cause. Because the challenged judge's tenure in the Family Division was due to expire the following month, the court continued the hearing to January, when a new judge would be assigned in the ordinary course.

Responding to the first fee application, father on December 12 filed both a request for order striking the fee application or staying it pending an anticipated trial "on the underlying issues" and a separate response to the application using a local form. In both father stated that the anticipated trial would demonstrate that Saign's fee application was based on "false" facts. Father's request for order was noticed for hearing January 31. But on December 21, the trial court granted the fee application, directing father and mother to each pay half of the requested sum within 45 days. The court also directed both parties to "file a complete Income and Expense Declaration" upon the next fee application.

Also on December 21, the trial court entered its findings and order after the November hearing, memorializing its determination that father's appeal from the order appointing minors' counsel did not stay the proceedings.

Later that month, father filed four notices of appeal, concerning: (1) the November 6 findings and order after hearing; (2) the November 20 order denying father's request for a statement of decision; and (3) both December 21 orders, separately.

Saign then made her second fee request. By ex parte application, father secured a January 31 hearing on this second fee request. In his ex parte application, father accused Saign of fraudulent billing practices that victimized his children by taking his money.

5

At the mid-January hearing on Saign's motion to expand the scope of her appointment, the trial court stated that minors' counsel's scope would be expanded without limits, explaining that a request for order with an opportunity to be heard satisfied due process. The court was "appalled" by the "personal attacks" father was making against Saign in his e-mails and pleadings.

At the January 31 hearing, expanded to encompass father's request for a future evidentiary hearing on the second fee request, father still had not filed an income and expense declaration, for which his counsel apologized. The court provisionally ruled that this second tranche of fees was payable, subject to a future evidentiary hearing for father to contest Saign's showing; the court reserved ruling on whether Saign would be required to testify.

In its written findings and order after the January 31 hearing, the trial court reaffirmed that the fees payable on Saign's second request were subject to an evidentiary hearing on Saign's fee applications.[2]

Before the trial court issued its written findings and orders for each of the January 2024 hearings, father filed a notice of appeal as to (1) the oral rulings at the mid-January hearing on Saign's motion to expand her scope; (2) the January ex parte order concerning an evidentiary hearing on Saign's second fee request; (3) the oral rulings at the late January hearing on Saign's second fee request; and (4) the provisional order approving Saign's second fee request. (See *In re Marcus* (2006) 138 Cal.App.4th 1009, 1015–1016 [oral motion rulings do not become court orders until reduced to writing, either in the court's minutes or in a written order signed by the judge and filed with the court]; Code

---

[2] Before issuing its written findings and order, the trial court issued the provisional order approving Saign's second fee request.

6

Civ. Proc., § 1003.)[3]  We treat this notice of appeal as filed immediately after entry of the court's written findings and orders.  (See Cal. Rules of Court, rule 8.104(d)–(e).)[4]

## II.    DISCUSSION

Mother has not filed a respondent's brief.[5]  Without her participation, "we 'decide the appeal on the record, the opening brief, and any oral argument by the appellant' [citation], examining the record and reversing only if prejudicial error is shown. [Citations.]"  (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 334.)[6]

As we will explain, only the first five of the nine postjudgment orders father challenges are properly considered on this appeal; none of these five, which relate to Saign's appointment as minors' counsel and the approval of her first application for compensation, reflect any reversible error.

### A.    *Appealability*

Father appeals from nine postjudgment orders:  (1) the September 29 order appointing Saign; (2) the November 6 findings and order after hearing regarding the appointment of minors' counsel; (3) the November 20 order denying a request for statement of decision; (4) the December 21 findings and order after hearing regarding the

---

[3] Undesignated statutory references are to the Code of Civil Procedure.

[4] Undesignated rules references are to the California Rules of Court.

[5] Nor did Saign file briefing on the merits of father's appeals.  Saign did, however, file a declaration that we discuss below.

[6] Father asserts that in our examination of the record we must weigh the trial court's denial of his requests for a statement of decision in his favor.  But his constitutional challenges to the appointment or identification of minors' counsel implicate no "trial of a question of fact" that would have entitled him to a statement of decision under section 632, had he made a timely request.  (See *In re Marriage of Askmo* (2000) 85 Cal.App.4th 1032, 1040 [explaining that § 632 typically "does not apply to an order on a motion"].)  To the extent an erroneous denial of a statement of decision would have disabled the doctrine of implied findings, our consideration of father's claims requires no implied findings.

7

automatic stay; (5) the December 21 order granting Saign's first fee request; (6) the January 29 order on father's ex parte application; (7) the February 5 order on Saign's second fee request; (8) the February 16 findings and order after hearing regarding Saign's request for an expanded scope; and (9) the March 1 findings and order after hearing regarding Saign's second fee request. We will review the orders issued through December 21 on this appeal, but the later orders are not presently appealable.

To be appealable under section 904.1, subdivision (a)(2), postjudgment orders must (1) raise issues different from those arising from an appeal from the judgment and (2) either affect the judgment or relate to its enforcement. (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651–652 .) But the postjudgment order must also be sufficiently final—it must not be preliminary to a later proceeding. (*In re Marriage of Olson* (2015) 238 Cal.App.4th 1458, 1462; *In re Marriage of Levine* (1994) 28 Cal.App.4th 585, 589 (*Levine*); see also *In re Marriage of Lloyd* (1997) 55 Cal.App.4th 216, 220 (*Lloyd*).)

Here, most of the orders are not independently appealable because they are preliminary to later proceedings. The orders appointing Saign and expanding her scope are preliminary to the future custody proceedings in which she was expected to represent the children's interests. (See *Lloyd*, *supra*, 55 Cal.App.4th at p. 220 [explaining that appointment of guardian ad litem was not appealable because it was preliminary to future proceedings on custody and visitation].) Similarly, the order concluding that father's appeal from Saign's appointment did not give rise to an automatic stay was in contemplation of Saign's participation in custody proceedings during the pendency of the appeal. The order denying father's request for a statement of decision was preliminary to the court's issuance of its ruling on the automatic stay issue. And the court's ex parte order reserving ruling on father's request for an evidentiary hearing on Saign's second fee request, granting father's request for an evidentiary hearing on Saign's fee request, and granting Saign's second fee request subject to reallocation after the evidentiary

8

hearing were all preliminary to a future evidentiary hearing addressing Saign's second fee request. (See *Levine*, *supra*, 28 Cal.App.4th at p. 589 [holding that order reserving issues concerning attorney fees and costs was preliminary to later proceedings].)

The only order father appeals from that was not preliminary to later proceedings is the December 21 fee order—a final determination that the parties are required to pay certain fees and costs Saign incurred representing their children in connection with postjudgment disputes related to child custody.[7] That order is appealable under section 904.1, subdivision (a)(2). Father's appeal from the December 21 fee order raises issues different from those that would arise from an appeal of the dissolution judgment, but these issues relate to the dissolution judgment or its enforcement, specifically the ongoing litigation over how the parties' conflict over the children's extracurricular activities impacts their stipulated parenting schedule.

On an appeal under section 904.1, we "may review . . . any intermediate ruling, proceeding, order or decision" that (1) "involves the merits" of the order appealed from, (2) "necessarily affects the . . . order appealed from," or (3) "substantially affects the rights of a party." (§ 906; see also *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 946 [describing three statutory prerequisites as "alternative[s]"]; but see *Estate of Dayan* (2016) 5 Cal.App.5th 29, 38 [describing "three-part statutory test"].) An " 'intermediate' " ruling is one "that led up to, or directly relates to, the judgment or order being appealed." (*Cahill*, at p. 948 [defining " 'intermediate' " to limit appealability of orders that substantially affect the rights of a party].)

---

[7] The order did not explicitly refer to father's request to strike or stay the fee request, which had been noticed for a later hearing. The postappeal grant of an evidentiary hearing regarding Saign's second fee application suggests that the court may have anticipated that the evidentiary hearing would also address the first fee request. But by that time the first request had been finally granted by a different judge, without any provision for later reallocation.

9

The orders concerning Saign's initial appointment and the application of the automatic stay are, in relation to the December 21 fee order, intermediate orders that involve the same merits and necessarily affect the order. So we will review them here. The remaining orders are not intermediate rulings that led up to or directly relate to the December 21 fee order, they are later orders leading up to or contemplating Saign's expanded involvement in the case and an evidentiary hearing on Saign's second fee request. So we will not review the remaining orders here.

For the foregoing reasons, we will dismiss appeal H051866. None of the orders addressed by that appeal—the January 29 ex parte order regarding an evidentiary hearing on Saign's second fee request, the February 5 order regarding Saign's second fee request, the February 16 order regarding Saign's request for an expanded scope, or the March 1 order regarding Saign's second fee request and an evidentiary hearing—are appealable at this time. But the December 21 fee order is appealable and the remaining appealed orders are properly reviewed on his appeal from that order.

## B.    *Forfeiture*

Father did not raise some of his appellate arguments in the trial court. "It is axiomatic that arguments not raised in the trial court are forfeited on appeal." (*Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1038 (*Camacho*).) "It is unfair to the trial judge and the adverse party to attempt to take advantage of an alleged error or omission on appeal when the error or omission could have been, but was not, brought to the attention of the trial court in the first instance." (*Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 912 (*Porterville*); see also *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184–185, fn. 1, overruled in part by *Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, 573, 582, fn. 4.) Forfeiture may extend to constitutional rights. (See *In re Dakota H.* (2005) 132 Cal.App.4th 212, 222 [finding forfeiture of claim that due process required a new finding of parental unfitness before

10

proceeding to a permanency hearing]; *D.Z. v. L.B.* (2022) 79 Cal.App.5th 625, 632–633; *People v. Saunders* (1993) 5 Cal.4th 580, 590.)

**C.** **Appointment of Minors' Counsel**

    **1.** **Father's Constitutional Challenge to the Appointment of Any Minor's Counsel**

        **a.** **The Statutory Scheme**

"If the court determines that it would be in the best interest of the minor child, the court may appoint private counsel to represent the interests of the child in a custody or visitation proceeding," subject to rules 5.240, 5.241, and 5.242. (Fam. Code, § 3150, subd. (a); *In re Marriage of Metzger* (2014) 224 Cal.App.4th 1441, 1446.) The court may "appoint counsel to represent the best interest of a child in a family law proceeding on the court's own motion." (Rule 5.240(b).) Counsel's role is "the representation of the child's best interests" and extends to "gather[ing] evidence that bears on the best interests of the child, . . . present[ing] that admissible evidence to the court," like counsel for any party, and "[i]f the child so desires, . . . present[ing] the child's wishes to the court." (Fam. Code, § 3151, subd. (a); *Marriage of Metzger*, at p. 1446.) "Counsel shall not be called as a witness in the proceeding" but "may introduce and examine . . . witnesses, present arguments to the court concerning the child's welfare, and participate further in the proceeding to the degree necessary to represent the child adequately." (Fam. Code, § 3151, subd. (b).) And "counsel shall receive a reasonable sum for compensation and expenses, the amount of which shall be determined by the court." (*Id*., § 3153, subd. (a).) The parties shall pay the reasonable sum "in the proportions the court deems just" unless "both parties together are financially unable to pay all or a portion of the cost of counsel," in which case the portion "the parties are unable to pay shall be paid by the county." (*Id*., § 3153, subds. (a), (b).)

11

### b.    *Father's Facial Challenge*

Father contends that the statutory scheme is unconstitutional for two primary reasons:  (1) It permits minor's counsel to submit "opinions" or "reports" without being cross-examined; and (2) it creates a tribunal—that is, minor's counsel—that has a financial interest in the proceedings—because a higher level of conflict will generate more hearings, interviews, interventions, and, as a result, fees.  We reject both contentions.

### i.    *Inability to Cross-examine Minors' Counsel*

As the title and statutory scheme make clear, minor's counsel acts as counsel, not as a witness.  (Fam. Code, §§ 3150, 3151, subds. (a) & (b), 3153, subds. (a) & (b).)  Because minor's counsel does not testify, the right of cross-examination is not implicated.  Nor does the prohibition on calling minor's counsel as a witness insulate the evidence minor's counsel gathers and submits to the court, as counsel, from scrutiny.[8]

Father's conflation of minor's counsel with an expert witness or legal guardian are unpersuasive.  The reports of custody evaluators and social workers are themselves evidence.  (Fam. Code, §§ 3110, 3111, subd. (c), 3115, 3117, subd. (b); Welf. & Inst. Code, § 355, subds. (b)–(d); *In re Dolly D.* (1995) 41 Cal.App.4th 440, 444; *Fewel v. Fewel* (1943) 23 Cal.2d 431, 435–436.)  Minor's counsel may submit evidence that counsel has collected, but minor's counsel is an advocate rather than a witness, expert or otherwise.

Nor is minor's counsel a party, as in a guardianship proceeding.  (Compare Fam. Code, § 3151, subd. (c)(4)–(6) [granting minor's counsel certain rights connected to the

---

[8] We recognize that minor's counsel is required to present the child's "wishes" to the court if the child desires it.  (Fam. Code, § 3151, subd. (a); see also *A.F. v. Jeffrey F.* (2023) 90 Cal.App.5th 671, 683 [explaining that "a child's best interests and a child's wishes [are] distinct"].)  But this does not distinguish minor's counsel from any other legal representative.

representation] with Prob. Code, § 2351.)  To the extent father raises policy concerns about the minimum qualifications for appointment as minor's counsel, he does not tether these to his constitutional claim.

At bottom, minor's counsel is a legal representative, not a witness, and for that reason is not subject to cross-examination.  The possibility that the line between a legal representative and a witness may be crossed in some cases does not provide a basis to sustain a facial challenge to the constitutionality of the statutes allowing the appointment of minor's counsel to advocate for their interests.[9]  (See *In re T.F.-G.* (2023) 94 Cal.App.5th 893, 909 (*T.F.-G.*) [explaining standard of review for a facial challenge].)

## ii.      *Financial Interest in the Litigation*

Court-appointed counsel are entitled to reasonable compensation for their work. (Fam. Code, § 3153, subd. (a).)  Father asserts that this gives minor's counsel an incentive to escalate courtroom conflict between the parents, as minor's counsel will receive more compensation from a case if it generates more legal work, such as contested hearings.  Father contends that this financial incentive generates a due process violation because minor's counsel is a "de facto agent of the county court system" analogous to a "county attorney whose department budget increases with every civil asset seizure" whose financial interest violates the due process guarantee of an impartial and disinterested tribunal.  We fail to see how the court's determination of reasonable compensation for appointed minor's counsel—any more than fee awards for any other appointed or retained attorney or any party—would deprive parents of their right to an impartial and disinterested tribunal.  Minor's counsel "performs no judicial or

_____

[9] Father expresses concern that minors' counsel might present damaging information to the court in relaying counsel's interpretation of an interview with a child. We are not presented with such a scenario here.  Moreover, there are permissible means for securing input from a minor child regarding custody or visitation.  (See Fam. Code, § 3042.)

13

quasi-judicial functions." (*Marshall v. Jerrico, Inc.* (1980) 446 U.S. 238, 247.) Nor is minor's counsel vested with authority to assess or collect fines. (See *id*. at pp. 249–250.)

The trial court also retains power to remove minor's counsel for good cause. (Rule 5.240(f)(4); see also Rule 5.240(e) [requiring courts to develop procedures to accept and respond to complaints about the performance of court-appointed counsel].) So the theoretical possibility that counsel, once appointed, might fail their statutory and fiduciary duties to represent their clients' interests supplies no basis to categorically prohibit the appointment of counsel.

## 2. *Father's Due Process Challenge to Saign's Appointment*

Father contends that the trial court violated his due process right to notice and an opportunity to object to Saign before she was appointed. But father was free to—and did—object to Saign's appointment once she had been appointed; the court considered his objections and found them meritless. Father has identified no liberty or property interest implicated by the identification of appointed counsel preceding the hearing on his objections; he also fails to show that the process afforded him was inadequate.

Courts examine "procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State, [citation]; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient, [citation]." (*Kentucky Dept. of Corrections v. Thompson* (1989) 490 U.S. 454, 460; see also *People v. Pillsbury* (2021) 69 Cal.App.5th 776, 789.)

Father's due process argument fails at the first step: He identifies no basis to conclude that he had a liberty or property interest in the identity of counsel appointed to represent his children in the adversarial proceedings between the parents. We will not make arguments for him. (See *Baglione v. Health Net of California, Inc.* (2023) 97 Cal.App.5th 882, 893; *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 (*United Grand*) ["We may and do 'disregard conclusory

14

arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt' "]; see also *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984–985; *In re Marriage of Furie* (2017) 16 Cal.App.5th 816, 824 ["we [may not] hold litigants in propria persona to different standards than we hold attorneys"].)

Nor has father shown the trial court to have precluded him from challenging Saign's appointment " 'at a meaningful time and in a meaningful manner.' " (*Mathews v. Eldridge* (1976) 424 U.S. 319, 333; see also *Community Youth Athletic Center v. City of National City* (2013) 220 Cal.App.4th 1385, 1431 (*Community Youth*).) " ' " '[D]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." [Citation.] "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." ' " (*Community Youth*, at p. 1431.)[10] Here, the trial court's order appointing Saign was subject to a later hearing—for "identification of counsel" and "review." The hearing was scheduled to give counsel "about six weeks . . . to meet with this family." And rule 5.240(f)(4) permitted father to seek Saign's removal on a showing of good cause.[11] Father has not shown that the court denied him a meaningful opportunity to be heard on how he believed Saign's appointment as minors' counsel infringed his interests.

### 3. *Father's Other Arguments*

#### a. *"Family Law Proceeding"*

Father contends that the trial court improperly appointed minors' counsel "outside a family law proceeding" (some capitalization omitted) in violation of rule 5.240(b).

---

[10] Where the due process clause applies, federal standards govern the decision on what process is due. (*Community Youth*, *supra*, 220 Cal.App.4th at p. 1431.)

[11] Rule 9(B) of the Superior Court of Santa Clara County, Local Family Rules, also provides for judicial review of a complaint about the performance of minor's counsel. Undesignated references to local rules are to these Local Family Rules.

(See Fam. Code, § 3150, subd. (a) [authorizing appointment of minor's counsel "in a custody or visitation proceeding"].) The appointment arose in a family law proceeding addressing child custody, and father makes no cogent argument to the contrary. We understand father's argument to be that the appointment order was not properly "in a family law proceeding" because it was not properly noticed—in father's view the court was required to file and serve a motion to appoint minors' counsel to create a proceeding, rather than give notice via e-mail of its intention and of the scheduling of a hearing for this purpose. But we do not read so narrowly the trial court's authority to appoint minors' counsel "on the court's own motion." (Rule 5.240(b).) Moreover, father did not object to the court's process; he responded to the trial court's e-mail notification by advising the trial court that he objected to the appointment and asking to be heard. The court accordingly permitted him to file a written objection in advance of the scheduled hearing on the issue. In the written objection, father explained that he had received the court's e-mail and objected to the appointment of minors' counsel. What he did not do is dispute the propriety of the court's giving notice by e-mail of its intent to appoint counsel. This contention is accordingly forfeited. (See *Camacho*, *supra*, 209 Cal.App.4th at p. 1038 [" 'It is axiomatic that arguments not raised in the trial court are forfeited on appeal' "].)

### b. *Rule 5.240(c)(1)*

Father contends that the order appointing minors' counsel was defective because it omitted Saign's telephone number, which rule 5.240(c)(1) requires along with counsel's name, counsel's address, the children's names, and the children's birthdates. The trial court's order substantially complied with rule 5.240(c)(1) because it identified Saign by name and address. (See generally *Manderson-Saleh v. Regents of University of California* (2021) 60 Cal.App.5th 674, 701.) Regardless, the omission of Saign's telephone number would not justify reversal of Saign's appointment or invalidate the

16

order: Father has not articulated any way that the omission of Saign's telephone number from the appointment order constituted or precipitated a miscarriage of justice. (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801; *Conservatorship of Maria B.* (2013) 218 Cal.App.4th 514, 532–533.)

**D.** *Automatic Stay*

Father contends that, under section 916, his appeal from the September 29 order appointing minors' counsel automatically stayed all proceedings relating to minors' counsel and that all such later proceedings therefore exceeded the trial court's jurisdiction. But, although we have reviewed Saign's appointment because it is related to father's appeal from the December 21 fee order, the order appointing minors' counsel was not independently appealable because it was preliminary to later proceedings. Father's appeal from the September 29 order was invalid. An invalid appeal does not affect the trial court's jurisdiction to proceed. (*Hearn Pacific Corp. v. Second Generation Roofing, Inc.* (2016) 247 Cal.App.4th 117, 146–147; *People v. Adamson* (1949) 33 Cal.2d 286, 289.)[12]

Separately, father has not provided any argument in support of his appeal from the order denying as untimely his request for a statement of decision on the automatic stay issue. So we reject his appellate challenge to the November 20, 2023 denial of his request for a statement of decision.

---

[12] Father contends that the trial court erred in ruling that an exception to the automatic stay allowed proceedings involving minors' counsel to proceed notwithstanding his appeal from her appointment. Because the automatic stay did not arise, we express no opinion on the court's identification of an exception. Any error was harmless.

17

**E.** *December 21 Fee Order*

    **1.** *Due Process*

Father contends that the trial court deprived him of the due process right to call Saign as a witness before it ruled on her first fee application.[13]  Father forfeited this claim by failing to raise it in the trial court.

The trial court's local rules prescribe the process for minor's counsel's fee applications.  Under local rule 9(C)(1), minors' counsel submits a fee request ex parte, using local form FM-1067 and following the procedures in that form.  Under local rule 9(C)(2), any response by a party is submitted on form FM-1068, following the procedures set out in that form.[14]  Form FM-1067 contains a notice to the parties, advising them that they must complete and file form FM-1068 within 21 calendar days and that failure to submit a response may result in an order directing payment of up to 100 percent of the fees and costs requested.  Form FM-1068 requires the filing party to include a current income and expense declaration or a previously filed income and expense declaration if the party declares that the information has not changed.  The form states that it, together with any attachments, must be filed within 21 calendar days of the

---

[13] Father also contends that the trial court ruled on Saign's second fee request without allowing him to call her as a witness and cross-examine her.  But consistent with our determination that the orders relating to the second fee request were not yet properly appealable, the trial court had not yet decided whether to permit father to cross-examine Saign about her second fee request when father noticed his appeal.  Father was not required to choose between appealing the second fee order and participating in the evidentiary hearing—he was not entitled to appeal before the court issued a final ruling.

[14] Forms FM-1067 and FM-1068 are necessary to understand the local rule.  Having given the parties a reasonable opportunity to present "information relevant to (1) the propriety of taking judicial notice of the matter and (2) the tenor of the matter to be noticed" and considered father's objection, on our own motion we take judicial notice of form FM-1067 last revised on November 4, 2022 and form FM-1068 last revised on January 1, 2022.  (Evid. Code, § 455, subd. (a); see also *id.*, §§ 459, 452.)

18

date on the application for fees and that failure to submit a response may result in an order directing payment of up to 100 percent of the fees and costs requested.

We reject father's contention that the fee application process is facially unconstitutional:  It does not deny parties an opportunity to be heard.  As exemplified here, an ex parte application process does not foreclose a hearing.[15]  On Saign's second fee application, father was granted not one but two hearings, including a further evidentiary hearing at which the court contemplated permitting him to cross-examine Saign about her fee request.  And in all cases the local rule allows a party 21 days to prepare an objection without limiting the documentary evidence or written argument a party may present.  At best, father has shown that in some cases the local rule permits (but does not require) fee awards on the papers without a live hearing.  That is not enough to show that it is facially unconstitutional—that is, unconstitutional in all or the great majority of cases.  (See *T.F.-G.*, *supra*, 94 Cal.App.5th at p. 909.)

Consistent with the local rules, father had 21 days to review Saign's fee application and respond in writing, without limitation on the written evidence he could submit in support of his response.  Father responded to Saign's application in writing using a modified form FM-1068:  He challenged the veracity of Saign's claim that she had received information about tennis, argued that time spent reviewing the tennis activity was noncompensable as a matter of law because the tennis lessons were at a church, challenged Saign's work as outside the scope of her appointment and in violation of an automatic stay, and asserted that time spent on " 'File Maintenance' " should not be compensated.  Before the trial court ruled on the first fee application, father did not

---

[15] Rules 5.151(e)(1)(D) and 5.169 contemplate that hearings may be convened on ex parte applications in family law proceedings.  Although the trial court's local rules generally provide that ex parte applications in family proceedings are "handled on the documents submitted" without a hearing (local rule 5(A)(2)(a)), the court did not apply that limitation to the more specific fee application process (local rule 9(C)) at issue here.

request that the trial court hold a hearing on the reasonableness of the fees claimed or request an opportunity to cross-examine Saign with respect to the fees. Had father asked the trial court for a hearing on the fee motion or an opportunity to question Saign regarding her first fee request, the court could have considered and addressed the request. (See *Porterville*, *supra*, 157 Cal.App.4th at p. 912.) His failure to do so forfeits his appellate challenge to the trial court's resolving the application on the papers without a hearing.

We recognize that father's opposition to Saign's fee application was not filed in a vacuum. Four days earlier, father had requested a trial on Saign's previously noticed motion to expand the scope of her appointment. Before he filed his opposition, he secured a continuance of the hearing on Saign's motion by moving to disqualify the assigned trial judge. And the same day he filed his modified form FM-1068, he also filed a request for an order striking Saign's fee request for the same reasons he opposed the fee request. In both his form FM-1068 and his request for order, he included an alternative request to stay the fee request until after the anticipated trial on Saign's request to expand her appointment's scope. But in neither his mandatory form FM-1068 nor his request for order did he request a hearing—evidentiary or otherwise—on Saign's request for fees already accrued.

Father characterizes his request for an order striking or staying the fee request as a demand for a hearing on the fee request. To be sure, his request for order was—like all requests for orders filed in the ordinary course of family litigation—set for a hearing. But the local rules specify a different mechanism for adjudicating fee requests. We are not persuaded that father's parallel resort to the trial court's law and motion calendar is a cognizable request for hearing on the reasonableness of fees claimed. To preserve the issue, father could simply have requested a hearing in his form FM-1068 response. More importantly, neither the form FM-1068 nor the request for order contains a request to be heard on the reasonableness of the fees claimed.

20

The stated purpose of the stay request included in the form FM-1068 and parallel request for order was to allow for resolution of factual disputes common to the motion to expand Saign's scope and the fee request before ruling on the fees. But the only factual dispute father identified was his contention that Saign made a false statement by omission when she said she had received information about only the children's tennis activity, without adding information father proffered he would show at trial—that "[his] daughter does not want to play tennis," had "months ago" stopped playing tennis, which "was not a secular extracurricular activity as commonly understood, but . . . a religious activity" because hosted by mother's church. Assuming the truth of father's factual contentions, we can discern no basis for inferring Saign's declaration was "false." Father's implied disagreement with Saign's views of the suitability of the tennis extracurricular activity goes to the merits of the parental dispute as to the children's activities, not to the reasonableness of Saign's fee request. Father has not contended on appeal that the trial court erred by implicitly denying his request to stay the first fee application until resolution of Saign's motion to expand the scope of her appointment going forward.

To the extent father contends that Family Code section 3151, subdivision (b) on its face denies him due process by precluding his examination of minors' counsel in connection with a fee dispute, his argument fails. The most obvious application of section 3151, subdivision (b) is to prevent minors' counsel from acting as a testifying witness on the merits in a custody or visitation proceeding. (See Fam. Code, §§ 3150, subd. (a), 3151, subd. (b).) Father's contention that Family Code section 3151, subdivision (b) prevents minors' counsel from being called as a witness for cross-examination on a fee request appears novel: Father has identified no decisions adopting his interpretation of the statute, and the trial court here left open the possibility of Saign testifying on this very issue.

21

### 2. *First Amendment, Equal Protection, Government Code, Section 68070 and Rule 5.40(c)(1)*

Father contends that compensating Saign for reviewing his filings (1) impermissibly burdens his right to petition the government under the First Amendment of the United States Constitution; (2) violates his right to equal protection under the Fourteenth Amendment of the United States Constitution; and (3) subjects him to hidden filing fees in violation of Government Code section 68070 and rule 5.40(c)(1). Father failed to preserve any of these arguments in opposing Saign's first fee request. Even if he had not forfeited these claims in the trial court, he has not developed his constitutional and statutory theories on appeal, so we treat his claim as abandoned. (*In re Phoenix H.* (2009) 47 Cal.4th 835, 845 (*Phoenix H.*) [" ' "Contentions supported neither by argument nor by citation of authority are deemed to be without foundation and to have been abandoned" ' "]; see also *United Grand*, *supra*, 36 Cal.App.5th at p. 153.)

### 3. *Ability to Pay*

Father contends that the trial court erred by ordering him to pay half of minors' counsel's fees and costs without determining his ability to pay.[16] He forfeited this claim by failing to dispute his ability to pay the first fee request and by failing to heed the directions in the local rules and the mandatory form response to submit an income and expense declaration.

Saign's submission of her request on form FM-1067 notified the parties of their obligation to respond using form FM-1068 within 21 days; form FM-1068 in turn provided that the party using the form must either update the income and expense declarations or financial statements or else resubmit and reaffirm the accuracy of the one already on file. Form FM-1068 cautioned that failure to respond may result in an award

---

[16] Father also complains that the trial court did not assess mother's ability to pay, but mother has contested neither the fee order nor its equal apportionment between the parties.

up to the full amount sought. Father filed a modified version of form FM-1068 without including an updated income and expense declaration or declaring that the information submitted in a prior such declaration was unchanged.[17]

### 4. *Reasonableness*

Father shows no abuse of discretion in the trial court's award of fees. " 'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' [Citation.] 'Fees approved by the trial court are presumed to be reasonable, and the objectors must show error in the award.' " (*Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 488 [applying abuse of discretion standard].)

First, father contends that the compensation and expenses the trial court authorized were unreasonable because Saign billed for work done beyond the initial scope of her appointment. But the trial court in appointing minors' counsel invited Saign to seek expansion of her role on a showing of good cause "to assist the children and overall to assist the family." The court was within its discretion to order that Saign be compensated for her efforts to assess whether expansion was necessary. The court ultimately deemed it appropriate to broaden the scope of Saign's appointment, implicitly concluding that these efforts were well spent.

Second, father asserts without reasoned argument or citation to authority that the eldest child's "tennis activity was in fact a religious activity beyond the court's jurisdiction." We treat this argument as abandoned. (*Phoenix H.*, *supra*, 47 Cal.4th at p. 845.)

---

[17] The form FM-1068 in father's Appellant's Appendix, like the one of which we have taken judicial notice, bore a last revision date of January 1, 2022. But the checkboxes relating to the submission of an income and expense declaration are missing, as is the notice to the parties on what would ordinarily be the form's second page.

Third, father contends that Saign improperly reviewed and disclosed the existence of a CPS report, so she either should receive no compensation at all or should receive no compensation for work associated with the CPS report. Father forfeited this claim by failing to raise it in the trial court. (See *Camacho*, *supra*, 209 Cal.App.4th at p. 1038.) We note as well that, by statute, minors' counsel may secure release of reports or files from the local child protective services agency, subject to the court's in camera review; what it prohibits is disclosure of the contents of reports thereby obtained "unless otherwise permitted by law." (Fam. Code, § 3152, subd. (c).) Saign obtained the report from mother's counsel. Father points to nothing in the statute that forecloses either Saign's review of a report obtained from a party or reasonable compensation for that review. To the extent father takes issue with Saign's disclosure in her filings in the trial court of the report's existence, he does not appear to have sought redaction or sealing in the trial court of anything she filed, and he identifies no basis for the trial court to deny fees as a sanction for the disclosure he now objects to.

Finally, citing *Thorpe v. Reed* (2012) 211 Cal.App.4th 1381, father argues that this court should stop Saign's "predatory billing practices." *Thorpe* involved enforcement of a special needs trust that "specified that a successor trustee was not entitled to compensation" of any kind. (*Thorpe*, at pp. 1383, 1391–1394.) No such specification applies here. (See Fam. Code, § 3153.) Father has not shown that the fees approved by the trial court were unreasonable, let alone predatory.

## F.     *Father's Attempts to Expand the Record*

In appeals H051518 and H051866, father asks us to take judicial notice of documents that do not appear to have been before the trial court when it issued the orders father appeals from. In both cases, the documents are proffered to impugn Saign's

24

character or suggest that she engaged in the unauthorized practice of law.[18]  We deny his requests.

Two of these documents father included in the appellant's appendix for appeal H051518, but they bear no indication of having been timely presented below, and it is only in his opening brief that father proposes that we nonetheless take judicial notice of them.  We accordingly strike the last two exhibits from father's appendix.[19]  (See *The Termo Co. v. Luther* (2008) 169 Cal.App.4th 394, 404 (*Termo*); Rule 8.124(g).)

In appeal H051866, father filed a procedurally proper request for judicial notice, but we have no reason to believe the associated documents were presented to the trial court.  Here too we deny the requests for judicial notice.  (See *Termo*, *supra*, 169 Cal.App.4th at p. 404.)

Alternatively, father proposes that we receive these documents in support of appellate findings under section 909.  We decline.  "The circumstances under which an appellate court can receive new evidence after judgment, or order the trial court to do so, are very rare.  For this court to take new evidence pursuant to statute [citations], the evidence normally must enable the Court of Appeal to affirm the judgment, not lead to a reversal."  (*Philippine Export & Foreign Loan Guarantee Corp. v. Chuidian* (1990) 218 Cal.App.3d 1058, 1090; see also *In re Zeth S.* (2003) 31 Cal.4th 396, 405 [absent exceptional circumstances, courts should not make findings of fact on appeal]; *Diaz v.*

---

[18] Neither father's briefs nor his exhibits dispute that Saign was licensed to practice law in California at all relevant times.

[19] We similarly disregard the extra-record factual assertions in the briefing, except to note that father's claims about minors' counsel do nothing to undermine either the appointing judge's stated concern that father was bent on advancing his own interests over those of the parties' children or the successor judge's criticism of father's invective as "appall[ing]."  In appointing minors' counsel, the court feared that the obvious conflict between the parents made it essential that the children's interests be represented in the proceedings by an attorney independent of either parent.  Nothing in the prosecution of this appeal gives us reason to question that threshold determination.

*Professional Community Management, Inc.* (2017) 16 Cal.App.5th 1190, 1213 [" 'The power created by the statute is discretionary and should be invoked sparingly, and only to affirm the case' "].) Nothing in father's proffered documents or allegations justifies the invited deviation from our normal role.

Finally, on the eve of oral argument father moved to augment the record with six documents filed in the trial court after the appeals before us. "[N]ormally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.' " (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) Father supplies no basis to deviate from this limitation. So we deny the motion to augment. Even if considered, the proffered documents would indicate no impropriety in the fee award that preceded their filing.

## III.   DISPOSITION

The following five orders are affirmed:  (1) the September 29, 2023 Order Appointing Children's Counsel; (2) the November 6, 2023 Findings and Order After Hearing; (3) the November 20, 2023 Order:  Request for Statement of Decision; (4) the December 21, 2023 Findings and Order After Hearing; and (5) the December 21, 2023 Order for Payment of Attorney Fees and Costs of Children's Counsel.

Appeal number H051866 is dismissed, and the remaining orders are not presently appealable.

_____

LIE, J.

WE CONCUR:

_____

DANNER, Acting P. J.

_____

BROMBERG, J.

*Stubbs v. Stubbs*
H051518, H051866, H051966, H051967, H051968 & H051969